1   LORI E. ANDRUS (SBN 205816)
    lori@andrusanderson.com
2   JENNIE LEE ANDERSON (SBN 203586)
    jennie@andrusanderson.com
3   PAUL LAPRAIRIE (SBN 312956)
    paul.laprairie@andrusanderson.com
4   ANDRUS ANDERSON LLP
    155 Montgomery Street, Suite 900
5   San Francisco, CA  94104
    Phone: (415) 986-1400
6   Fax:    (415) 986-1474

7   *Attorneys for Plaintiff*

8

9                  UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12

13   JANE DOE,                          Case No. 4:18-CV-02420-DMR

14            Plaintiff,                 **PLAINTIFF'S OPPOSITION TO
                                         DEFENDANTS' MOTION TO
         vs.                             DISMISS PLAINTIFF'S COMPLAINT
15                                       PURSUANT TO F.R.C.P. 12(B)(6)**
     VIRGIN AMERICA, INC, ALASKA AIR
16   GROUP, INC. and STUART DINNIS,      Date:    July 12, 2018
                                         Time:    11:00 a.m.
17            Defendants.                Dept.:   Courtroom 4, 3rd Floor
                                         Judge:   Hon. Donna M. Ryu
18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF THE RELEVANT ALLEGATIONS ........................................ 2

III.  LEGAL ARGUMENT ......................................................................................... 3

    A. Legal Standard for a 12(b)(6) Motion to Dismiss. .............................................. 4

    B. The Airline Defendants Are Liable for the Wrongful Conduct of Their Employee Under the Legal Doctrines of *Respondeat Superior* and Agency. .................................. 5

        1.  Vicarious Liability Attaches Pursuant to *Respondeat Superior*.................................. 5

        2.  Direct Liability Attaches Based on Dinnis's Agency Relationship with Virgin. ......... 8

        3.  The Other Cases On Which the Airline Defendants Rely Do Not Change the Outcome. .................................................................................................... 9

    C. California's Statutes Are Appropriately Applied in This Matter....................................... 9

        1.  California's Statutes Apply to the Conduct of California Residents Abroad. ........... 10

        2.  California's Choice of Law Analysis Dictates That California Law Applies............. 11

        3.  No Due Process Rights are Offended by Holding a California Corporation Liable under Californi Law for California Conduct. .................................................. 14

IV.  CONCLUSION.................................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**STATE CASES**

3

*Angelucci v. Century Supper Club*
   41 Cal. 4th 160 (2007) ...................................................................................11

4

*Daza v. Los Angeles Comm. College*
   247 Cal. App. 4th 260 (2016)............................................................................9

5

*Diamond Multimedia Sys., Inc. v. Super. Ct.*
   19 Cal. 4th 1036 (1999) ..................................................................................10

6

*Doe v. Capital Cities*
   50 Cal. App. 4th 1038 (1996).............................................................................8

7

*Farmers Ins. Group v. County Santa Clara*
   11 Cal. 4th 992 (1995) ......................................................................................9

8

*Hernandez v. Burger*
   102 Cal. App. 3d 795 (1980)...........................................................................13

9

*Hurtado v. Super. Ct.*
   11 Cal.3d 574 (1974) .......................................................................................12

10

*John Y. v. Chapparral Treatment Center*
   101 Cal. App. 4th 565 (2002)............................................................................9

11

*Kasel v. Remington Arms Co.*
   24 Cal. App. 3d 711 (1972)..............................................................................13

12

*Lisa M. v. Henry Mayo Newhall Memorial Hosp.*
   12 Cal. 4th 297, n.3 (1995) ...............................................................................5

13

*McCarty v. Workmen's Comp. Appeals Bd.*
   12 Cal. 3d 677 (1974) ........................................................................................7

14

*Myers v. Trendwest Resorts, Inc.*
   148 Cal. App. 4th 1403 (2007).......................................................................5, 9

15

*Norwest Mortg., Inc. v. Superior Court*
   72 Cal. App. 4th 214 (1999)............................................................................15

16

*Purton v. Marriott Int'l, Inc.*
   218 Cal. App. 4th 499 (2013).............................................................................7

17

*Sullivan v. Oracle Corp.*
   51 Cal. 4th 1191 (2011) ...................................................................................11

18

*Wershba v. Apple Computer, Inc.*
   91 Cal.App.4th 224 (2001)...............................................................................10

19

*Yamaguchi v. Harnsmut*
   106 Cal. App. 4th 472 (2003).............................................................................6

**FEDERAL CASES**

*AT & T Mobility LLC v. AU Optronics Corp.*
   707 F.3d 1106 (9th Cir. 2013).........................................................................14

*Beliveau v. Caras*
   873 F. Supp. 1393 (C.D. Cal. 1995) ...............................................................11

*Billings v. United States*
   57 F.3d 797 (9th Cir. 1995)................................................................................6

20

21

22

23

24

25

26

27

28

ii

*Costos v. Coconut Island Corp.*
  137 F.3d 46 (1st Cir. 1998) ....................................................................................... 8

*CRS Recovery, Inc. v. Laxton*
  600 F.3d 1138 (9th Cir. 2010) ................................................................................ 12

*Doe v. Uber Technologies, Inc.*
  184 F.Supp.3d 774 (N.D. Cal. 2016) ............................................................. 5, 6, 8

*Farar v. Bayer AG*
  No. 14-CV-04601-WHO, 2017 WL 5952876, at *16 (N.D. Cal. Nov. 15, 2017).......... 12, 13

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000) .................................................................................. 4

*Love v. United States*
  915 F.2d 1242 (9th Cir. 1988) .................................................................................. 4

*Mendiondo v. Centinela Hosp. Med. Ctr.*
  521 F.3d 1097 (9th Cir. 2008) .................................................................................. 4

*Paulsen v. CNF Inc.*
  559 F.3d 1061 (9th Cir. 2009) ................................................................................ 12

*Precht v. Kia Motors Am., Inc.*
  No. SACV141148DOCMANX, 2014 WL 10988343, at *5 (C.D. Cal. Dec. 29,
  2014) ........................................................................................................................ 10

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*
  806 F.2d 1393 (9th Cir. 1986) .................................................................................. 4

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*
  No. C-13-1803 EMC, 2013 WL 4530470, at *11 (N.D. Cal. Aug. 26, 2013) ............... 12, 13

*Thompson v. Nat'l R.R. Passenger Corp.*
  No. C 08-03280 CRB, 2008 WL 11398932, at *4 (N.D. Cal. Dec. 17, 2008) ......... 10, 11, 14

*Xue Lu v. Powell*
  621 F.3d 944 (9th Cir. 2010) .................................................................................... 7

**UNITED STATES SUPREME COURT CASES**

*Allstate Ins. Co. v. Hague*
  449 U.S. 302 (1981) ................................................................................................ 14

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................................................................................................. 4

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) .................................................................................................. 4

*Campbell v. Arco Marine, Inc.*
  42 Cal.App.4th 1850 (1996) .................................................................................. 15

*Klaxon Co. v. Stentor Elec. Mfg. Co.*
  313 U.S. 487 (1941) ................................................................................................ 12

*Lauritzen v. Larsen*
  345 U.S. 571 (1953) ................................................................................................ 15

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ................................................................................................ 14

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIV ............................................................................................ 14

iii

**OTHER AUTHORITIES**

Cal. Civ. Code § 51.7(a) .................................................................................3, 10, 11

Cal. Civ. Code § 52.1 ............................................................................................3, 11

Cal. Govt. Code § 12940(k) ..........................................................................................3

Fed. R. Civ. P. 12(b)(6).................................................................................................1

Fed. R. Civ. P. 15(a).....................................................................................................4

Fed. R. Civ. P. 8(a).......................................................................................................4

Restatement (Second) of Agency § 219(2)(d) ............................................................8

1    I.        **INTRODUCTION**

2            Sexual harassment in a professional setting is odious and far too pervasive.  And while the

3    perpetrator is surely to blame in such instances, the law also extends responsibility for sexual

4    harassment to companies that employ known offenders.

5            Holding corporations accountable for the bad acts of an employee is particularly important

6    where, as here, the defendant company knew of prior offenses by a man who drank to excess and

7    accosted women but turned a blind eye because he was a high-level corporate executive, and just

8    another "one of the boys."

9            Corporate liability for sexual harassment arises under several different legal theories,

10   including: negligence, when the company negligently supervises or retains the offender; vicarious

11   liability pursuant to *respondeat superior*, when tortious conduct is carried out in the course and

12   scope of employment; and direct liability, when the perpetrator's misconduct arises while he is

13   acting as the agent of the employer.

14           In this case, Virgin America, Inc. ("Virgin") knowingly employed a sexual predator,

15   Stuart Dinnis ("Dinnis").  Despite repeated offenses, Virgin did not discipline or fire Dinnis

16   before he sexually assaulted Jane Doe ("Plaintiff") after becoming intoxicated at a work event.

17           Dinnis's actions—and Virgin's failure to prevent them—have had a profound impact on

18   Plaintiff.  To this day, she is afraid to travel alone, or to be in an elevator or a hotel hallway by

19   herself.  No woman should be made to feel this way, and thus Plaintiff's primary objective in

20   bringing this lawsuit is to make the professional world safer for working women and their

21   daughters.

22           Virgin and Alaska Air Group, Inc. ("Alaska") (collectively, the "Airline Defendants")

23   seek to avoid vicarious and direct liability for Dinnis's assault, by claiming that: a) Dinnis was

24   not acting in the course and scope of his employment; and b) California statutes do not apply to

25   this matter.

26           For the reasons explained below, the Airline Defendants' Motion to Dismiss Plaintiff's

27   Complaint Pursuant to F.R.C.P. 12(b)(6) ("Motion") should be denied.

28   ///

1

1    **II.    SUMMARY OF THE RELEVANT ALLEGATIONS**

2         In the fall of 2016, Plaintiff Jane Doe was a Vice President for Research Now, a global

3    expert in online market research data and a business partner of Virgin.  Complaint ¶¶ 13, 15 (Dkt.

4    No. 1).  Dinnis was the Director of Loyalty at Virgin and was a resident of California.[1]  *Id*. at ¶¶

5    7, 14.  As a part of his professional roles and responsibilities, Dinnis attended—in a professional

6    capacity alongside other Virgin employees—a conference in Toronto, Canada, for the purpose of

7    meeting and networking with other professionals in the travel and loyalty sector.[2]  *Id*. at ¶¶ 14,

8    17-18.

9         At the conference, Dinnis introduced himself to Plaintiff while she was networking with

10   other Virgin employees who directly reported to him.  *Id.* at ¶ 17.  While obviously intoxicated,

11   Dinnis repeatedly engaged Plaintiff during the networking event.  *Id*. at ¶ 18.  When Plaintiff

12   returned to her hotel, Dinnis was waiting for her in the lobby.  *Id*. at ¶ 19.   Taking advantage of

13   Plaintiff's need to preserve her company's professional relationship with Virgin, Dinnis

14   repeatedly battered and assaulted Plaintiff in a sexual manner.  *Id*. at ¶¶ 19-32.

15        Virgin maintains its principal place of business in Burlingame, California.  *Id.* at ¶ 2.

16   During the course of his duties in Virgin's employment, Dinnis was expected to attend

17   networking events and hold business meetings with key partners of the company's loyalty

18   program.  *Id*. at ¶ 47.  To that end, Virgin paid Dinnis's travel and accommodation expenses for

19   the subject conference.  *Id*.

20        Prior to the assault on Plaintiff, Virgin was well aware that Dinnis regularly engaged in

21   lewd and drunken behavior, including sexually assaulting female business associates.  *Id*. at ¶ 42.

22   Specifically, in November 2015 (nearly a year before he attacked Plaintiff) Dinnis sexually

23   assaulted a female employee of a hotel booking company at a work function, and in mid-2016

24   Dinnis again assaulted two female employees of the same hotel booking company.  *Id*.  at

25

26   [1] After his employment with Virgin was terminated, Dinnis return to his native Australia, where
     he was successfully served on June 4, 2018 via the Hague Convention on Service.  Dkt. No. 16.

27   [2] A "customer loyalty program" is a program that offers frequent customers benefits in the form
     of discounts, rebates, free products, or other promotions.  "Loyalty marketing" is a strategic

28   approach to marketing in which a company focuses on growing and retaining existing customers
     through incentives.  Companies like Research Now partner with airlines in the "loyalty sector."

                                                    2

¶¶ 43-44.  Other Virgin employees witnessed and/or were aware of the assaults, and after Dinnis assaulted Plaintiff, related to her and others that Dinnis had issues with drinking and respecting boundaries with women, and expressed embarrassment at his repeated misconduct.  *Id*. at ¶ 44.

Based on these prior instances, Virgin had ***actual knowledge*** of Dinnis's history of witnessed sexual assaults, regularly carried out during networking business events and within the course and scope of his employment duties, and with more than sufficient time to have implemented corrections.  *Id.* at ¶ 45.

In attending the networking event, Dinnis was acting as Virgin's agent, and his conduct was broadly incidental to the enterprise undertaken by Virgin.  *Id.* at ¶ 47.

## III.   LEGAL ARGUMENT

The Airline Defendants acknowledge that Dinnis's actions are reprehensible (Motion at p. 15), but they seek to distance themselves from their responsibility for those actions.  The law, however, holds employers liable for the acts of their employees that are within the scope of employment and are foreseeable.  Dinnis's reprehensible conduct at a work conference was not merely foreseeable, but rather predictable, as Virgin had knowledge of Dinnis's past transgressions of the same nature and in the same work context.  The Airline Defendants are further liable for Dinnis's conduct because he was acting as an agent of Virgin at the conference.

Virgin, a corporation with its principal place of business here in California, seeks to avoid liability under the California statutes Cal. Civil Code sections 51.7(a) ("the Unruh Civil Rights Act") and 52.1 ("the Ralph Civil Rights Act") (collectively "The Civil Rights statutes") for its conduct in sending a California employee, known to accost female business associates at work conferences, to a work conference where he assaulted a female business associate.[3]  But Virgin's California conduct gives rise to its liability under the Civil Rights statutes such that no extraterritorial application of the statute is required.  Additionally, the Airline Defendants attempt to manufacture a conflict of law to avoid liability under the Civil Rights statutes, and then ignore California's fundamental interest in regulating its residents' misconduct, while conceding that

---

[3] The Airline Defendants also challenge their liability under Cal. Govt. Code § 12940(k), but because Plaintiff did not exhaust her administrative remedies under that statute, Plaintiff does not oppose the Airline Defendants' challenge to the Sixth Cause of Action.

1    there is no conflict of law for Plaintiff's tort claims.  In the end, the Airline Defendants fail to

2    carry their burden of identifying what law the Civil Rights statutes are meant to conflict with, and

3    thus no conflict exists.  Finally, there is no deprivation of due process in holding a corporation

4    headquartered in California liable under California statutes where it has a significant aggregation

5    of contacts with California.

6         Because the Airline Defendants are liable for Dinnis's actions under both theories of

7    direct and vicarious liability, and because it is appropriate to hold a California defendant company

8    liable under California statutes for acts emanating from California, the Airline Defendants'

9    Motion should be denied.

10        **A.**   <u>**Legal Standard for a 12(b)(6) Motion to Dismiss.**</u>

11        Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead claims with sufficient

12   specificity to "give the defendant fair notice of what the … claim is and the grounds upon which

13   it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and

14   citations omitted).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks

15   a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

16   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  When deciding whether to grant

17   a motion to dismiss, the court must accept as true all "well-pleaded factual allegations." *Ashcroft*

18   *v. Iqbal*, 556 U.S. 662, 679 (2009).  The court must also construe the alleged facts in the light

19   most favorable to the plaintiff.  *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).  If

20   dismissal is granted, leave to amend should be freely allowed "unless the court determines that

21   the allegation of other facts consistent with the challenged pleading could not possibly cure the

22   deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

23   1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); Fed. R. Civ. P. 15(a).

24   ///

25   ///

26   ///

27   ///

28   ///

**B.   The Airline Defendants Are Liable for the Wrongful Conduct of Their**

**Employee Under the Legal Doctrines of *Respondeat Superior* and Agency.**

Under California law, an employer may be liable for the acts of its employee under two

doctrines.  The first, ***vicarious liability***,[4] attaches to torts committed by the employee within the

scope of his or her employment.  *Myers v. Trendwest Resorts, Inc.*, 148 Cal. App. 4th 1403, 1427

(2007).  The second is the theory of agency, pursuant to which an employer may be ***directly liable***

for acts of its agents.  *Id.*  The two doctrines are distinct, though the "cases do not always

distinguish between" them.  *Id.*  In this case, the two doctrines provide independent grounds for

the Airline Defendants' liability.

**1.   Vicarious Liability Attaches Pursuant to *Respondeat Superior*.**

Although the Airline Defendants would have us believe otherwise, the California Supreme

Court **has not** declared that sexual misconduct by an employee always bars vicarious liability on

the part of the employer.  In fact, as Judge Illston explained in *Doe v. Uber Technologies, Inc.*,

184 F.Supp.3d 774 (N.D. Cal. 2016), "[i]t is no longer a principle under California law that an

employer may be vicariously liable for an employee's assault only when the assault was

committed to further the interests of the employer."  *Id.* at 784–85 (citing *Lisa M. v. Henry Mayo*

*Newhall Memorial Hosp.*, 12 Cal. 4th 297, n.3 (1995)).

Instead, vicarious liability attaches where:

> 'in the context of the particular enterprise an employee's conduct is not so unusual
> or startling that it would seem unfair to include the loss resulting from it among
> other costs of the employer's business.' []  This 'foreseeability' analysis looks not
> to 'statistical frequency, but [to the] relationship between the nature of the work
> involved and the type of tort committed.' []  As guidance, courts in California
> consult three policy goals underlying the *respondeat superior* doctrine: 'preventing
> future injuries, assuring compensation to victims, and spreading the losses caused
> by an enterprise equitably ....' []

*Uber*, 184 F.Supp.3d at 784 (quoting, *inter alia*, *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,

12 Cal.4th 291, 302 (1995), other citations omitted).

Applying these principles to the present case, the detailed allegations contained in

---

[4] Vicarious liability is interchangeably referred to as *respondeat superior* ("let the master
answer").

5

1   Plaintiff's Complaint sufficiently link Dinnis's conduct to his employer's business activities to

2   survive the pleading stage, given the nature of the work involved and the type of tort committed

3   (i.e., the particular enterprise Virgin and Dinnis were engaged in).  As explained in *Uber*, whether

4   an employee who commits a sexual assault was acting within the scope of employment is

5   ordinarily a question of fact and should not be determined at the pleading stage as a matter of law.

6   184 F.Supp.3d at 785–86; *see also Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995)

7   (holding that the question of scope of employment and concomitant determination of the

8   employer's vicarious liability is a fact question best assessed at a jury trial or summary judgment

9   where conflicting inferences are possible); *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472 (2003)

10  (recognizing issue of scope of employment/vicarious liability as a question of fact where kitchen

11  employee threw hot oil on another cook and a police officer during altercation at work).

12      Defendants cannot reasonably dispute that Dinnis's attendance at the conference was in

13  furtherance of, and for the benefit of, Virgin's business.  Complaint ¶ 47.  Virgin sent Dinnis to

14  the conference with the intent and expectation that he would cultivate new potential business

15  partners and manage existing relationships.[5]  "He was expected to attend networking events and

16  hold business meetings with key partners of the loyalty program."  *Id*.

17      Plaintiff's position as a potential business partner further supports the fact that Dinnis's

18  conduct was an outgrowth of his employment.  Dinnis did not choose to sexually assault a

19  stranger that night.  Instead, he zeroed in on a business associate interested in forming a corporate

20  partnership between her employer and Virgin; a woman who Dinnis knew had a need to preserve

21  their professional relationship.[6]  Complaint ¶ 19.

22      The drinking that preceded Dinnis's attack was also in furtherance of Virgin's business

23  goals.  As Plaintiff's Complaint explains: "[c]onsumption of alcohol at these types of events was

24  a customary incident to Dinnis's employment with Virgin and was tolerated and ratified, if not

---

25

26  [5] Likewise, Plaintiff was expected, as a part of her work duties, to network with Dinnis and his colleagues from Virgin during the conference.  Complaint ¶ 15.  In the eyes of her employer, Virgin was a valuable account, and Dinnis a key player with whom she should meet.  *Id*.

27  [6] Since Plaintiff's job success depended on her acquiring the lucrative Virgin account, this made her particularly vulnerable, and Dinnis knew it since he had a history of accosting business

28  associates.  *Id*. ¶ 41.

1    encouraged, by Virgin.  At a minimum, Virgin was aware of the consumption of alcohol during

2    these types of events, and Dinnis's drinking to excess was foreseeably within the course and

3    scope of his employment."  Complaint ¶ 48.  Of course, Virgin paid all of Dinnis's expenses

4    associated with the conference, including for excessive amounts of alcohol.  *Id.* at ¶ 47.

5            California courts have long recognized that where drinking is customary, and intoxication

6    is tolerated, an employer can be held vicariously liable for the results thereof.  *McCarty v.*

7    *Workmen's Comp. Appeals Bd.*, 12 Cal. 3d 677, 682–84 (1974) (holding that where drinking after

8    work was an established and encouraged custom, employee's resulting drunken acts fell within

9    the scope of employment); *see also Purton v. Marriott Int'l, Inc.*, 218 Cal. App. 4th 499, 511

10   (2013) ("We think that if a commercial enterprise chooses to allow its employees to consume

11   alcoholic beverages for the benefit of the enterprise, fairness requires that the enterprise should

12   bear the burden of injuries proximately caused by the employees' consumption.").

13           The fact that Dinnis's conduct may have crossed from normal networking behavior into

14   unacceptably drunken and aggressive behavior, does not save the Airline Defendants for two

15   reasons.  First, employers do not escape vicarious liability simply because an employee behaves

16   in an odious, or even illegal, manner.  For example, in *Xue Lu v. Powell*, an immigration officer

17   accepted bribes and sexually molested asylum seekers.  621 F.3d 944, 949 (9th Cir. 2010).

18   Evaluating the defendant's argument that the officer's actions were illegal, and therefore

19   unforeseeable, the Ninth Circuit explained that the officer "was part of a process in which he was

20   expected to participate in a lawful way, reviewing the documentation of the asylum applicant,

21   interviewing her, and assessing the credibility of her claims.  [He] abused his powers for his own

22   benefit.  In doing so, he acted within the scope of his employment."  *Id* In order to compensate

23   the officer's victims, spread the loss, and stimulate the government to greater vigilance in

24   controlling aberrant behavior, the Ninth Circuit found the officer's conduct "unauthorized, but

25   incidental to the asylum system."  *Id*.  The same is true here: although Dinnis's drunken sexual

26   assault may not have been Virgin's desired outcome of the networking events, it was certainly

27   incidental to them, and holding Virgin vicariously accountable is likely to prevent future injuries,

28   assure compensation to victims, and spread the losses caused by Virgin's enterprise equitably.

1   The second reason that Virgin cannot immunize itself from accountability for Dinnis's

2   "twisted" conduct (Motion at p. 2) is because his drunken, lewd behavior was ***well known*** to

3   Virgin.  Complaint ¶¶ 42-45.  Virgin complains about fairness, Motion at p. 14, but how is it fair

4   for a company to ignore repeated drunken sexual assaults by one of its executives?

5   Given the robustness of the allegations in Plaintiff's Complaint, and for all of the

6   foregoing reasons, Dinnis's "conduct was broadly incidental to the enterprise undertaken by

7   Virgin." Complaint ¶ 47.  Just as in *Uber*, Plaintiff has plausibly alleged that Dinnis was acting

8   within the scope of employment when he assaulted her.  184 F. Supp. 3d at 785.

9   ## 2.  Direct Liability Attaches Based on Dinnis's Agency Relationship with

10   ## Virgin.

11   Although vicarious liability is sufficient to charge the Airline Defendants with

12   responsibility for Dinnis's tortious conduct, the fact that Dinnis was acting as the Airline

13   Defendants' agent at the conference provides alternative, ***direct***, grounds for establishing liability.

14   *See Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1047 (1996).

15   In *Capital Cities*, a sexual assault case with facts analogous to this one, a movie studio's

16   agency relationship with a casting director who sexually assaulted an aspiring actor was found to

17   support the movie studio's direct liability for the assault.  *Id*. at 1050.

18   Under the Restatement (Second) of Agency, a principal is subject to liability for the torts

19   of an agent where the agent "was aided in accomplishing the tort by the existence of the agency

20   relation."  § 219(2)(d).  Dinnis was aided in his assault by his position at Virgin and Plaintiff's

21   need to preserve her company's professional relationship with Virgin.  Accordingly, Virgin

22   should be held directly liable for the acts of its agent.  *See, e.g.*, *Costos v. Coconut Island Corp.*,

23   137 F.3d 46, 48 (1st Cir. 1998) (where inn manager raped a guest, inn could be held liable where

24   the rape was accomplished by virtue of inn manager's position that granted him access to, and

25   knowledge of, his victim).

26   Here, Plaintiff alleges that Dinnis was, at all relevant times, acting as the agent of the

27   Airline Defendants.  Complaint ¶ 47.  Since, as discussed above, all of Dinnis's actions

28   undertaken at the conference were on behalf of Virgin, and Dinnis was aided in accomplishing his

8

assault by virtue of his role as Virgin's agent, the consequences of those actions are directly attributable to the Airline Defendants.

### 3. The Other Cases on Which the Airline Defendants Rely Do Not Change the Outcome.

Plaintiff recognizes that there are cases in which employers have escaped responsibility for sexual assaults carried out by their employees, but those cited by the Airline Defendants are distinguishable or otherwise not determinative.

*Farmers Ins. Group v. County Santa Clara*, which was decided after a jury trial, is distinguishable in that the deputy's conduct was entirely "personal in nature" and unconnected to the business purposes of operating a county jail. 11 Cal. 4th 992 (1995). Similarly, the appellate court in *John Y. v. Chapparral Treatment Center*, decided after a jury trial, determined that the perpetrator's conduct was not "engendered" by his work and had "no purpose connected to his employment." 101 Cal. App. 4th 565, 576 (2002). The community college in *Daza v. Los Angeles Comm. College*, which was primarily concerned about the scope of employment for public employee indemnification purposes, found the conduct of a guidance counselor who assaulted a student was "neither inherent not typical of the District's educational enterprise." 247 Cal. App. 4th 260, 269 (2016). In *Myers v. Trendwest Resorts, Inc.*, it was particularly important to the appellate court that the assault happened on a non-work outing. 148 Cal. App. 4th 1403 (2007).

In contrast to these cases, here, as Plaintiff has amply described above, there is a much stronger connection between Dinnis's required networking activities, his consumption of alcohol (approved by Virgin), and the assault of a business associate with whom he was expected to socialize in furtherance of Virgin's business goals.

### C. California's Statutes Are Appropriately Applied in This Matter.

Despite apparently conceding that California law applies to Plaintiff's claim of negligent supervision and retention—as the Airline Defendants do not challenge Plaintiff's First Cause of Action—the Airline Defendants would have this court ignore California law for the rest of Plaintiff's claims. But the Airline Defendants have failed to carry their burden to specify what

9

specific, relevant, and material law would apply if not California law.  Nor have they identified *any actual conflict of laws* or shown that the application of California law would offend their due process rights.

### 1. California's Statutes Apply to the Conduct of California Residents Abroad.

The Airline Defendants invoke a presumption against extraterritorial application of California's laws to challenge Plaintiff's claims under the Civil Rights statutes.  Motion at p. 6-7.  But the presumption against extraterritorial application of California laws does not apply where it is California conduct that gives rise to liability under the statute.

The presumption against extraterritorial application of California's laws "has never been applied to an injured person's right to recover damages suffered as a result of an unlawful act or omission committed in California."  *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999) (permitting out-of-state purchasers of securities affected by unlawful market manipulation to recover under California's corporate securities law); *see Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 243 (2001) (California statutes apply to "non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California."); *Thompson v. Nat'l R.R. Passenger Corp.*, Case No. C 08-03280 CRB, 2008 WL 11398932, at *4 (N.D. Cal. Dec. 17, 2008) (holding it was premature on motion to dismiss to deny application of FEHA to employee who worked in Nevada where employer supervised employee from its California offices).  The presumption against extraterritoriality does not apply where a complaint sufficiently alleges California conduct.  *Precht v. Kia Motors Am., Inc.*, Case No. SACV141148DOCMANX, 2014 WL 10988343, at *5 (C.D. Cal. Dec. 29, 2014) (denying motion to dismiss Florida consumer's California statutory claims where "Defendant made its decisions about what to communicate and what not to communicate to consumers" in California).

Although the Airline Defendants urge that the Civil Rights statutes do not apply to conduct outside California, the Unruh Act must be "construed liberally in order to carry out its purpose" and its "provisions were intended as an active measure that would create and preserve a

10

nondiscriminatory environment in *California business establishments* by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments." *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007) (emphasis supplied).  For example, where a building owner's resident manager sexually battered a tenant, claims under both the Unruh Civil Rights act and Ralph Civil Rights Act alleging *respondeat superior* liability for the building owner could not be dismissed at the pleading stage.  *Beliveau v. Caras,* 873 F. Supp. 1393, 1399 (C.D. Cal. 1995).  As a California business establishment, the Unruh Civil Rights Act and Ralph Civil Rights Act prohibit the Airline Defendants from engaging in invidious discrimination, including by dispatching their employee and agent from California to work functions where they have a known propensity to assault women in their professional orbit.

The Airline Defendants' citation to *Sullivan v. Oracle Corp.* does not counsel against the application of California law to the present dispute, as in *Sullivan* the court declined to find liability under California's Unfair Competition Law for failure to pay required overtime compensation to non-California employees *because* the employer's classification policy, which was the only California conduct alleged, was not "unlawful in the abstract."  51 Cal. 4th 1191, 1208 (2011).  However, here in California, Virgin determined the course and scope of Dinnis's employment to include attending networking events where he was known to drink and accost women attending such events, and it is from California that the Airline Defendants dispatched Dinnis, Virgin's agent, to the conference where he assaulted Plaintiff.  Virgin's corporate conduct occurred in California and gives rise to Virgin's liability under California's Civil Rights statutes.

At this stage of the pleadings, Plaintiffs have set forth sufficient allegations to undermine the Airline Defendants' contention that the Civil Rights statutes would not apply to the conduct alleged.  *See Thompson*, 2008 WL 11398932, at *4 (denying motion to dismiss where pleadings set forth allegations that undermine contention that misconduct occurred exclusively out of state).

## 2.  California's Choice of Law Analysis Dictates That California Law Applies.

In diversity cases a federal court must apply the conflict-of-law rules of the state in which the federal court sits to determine which state's laws should apply to a particular legal issue.

1   However, first there must be a demonstrated **conflict** of laws for the forum state's laws not to

2   apply, and the Airline Defendants have not carried their burden to establish a conflict exists in

3   this case.  Rather, they have conceded that no conflict exists, Motion at p. 8, and thus the Court

4   must apply California law.

5        A federal court applies the conflict-of-law rules of the state in which it sits.  *Klaxon Co. v.*

6   *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  California courts apply a "governmental

7   interest approach," requiring an "analysis of the respective interests of the states involved," to

8   determine which state's law should apply to a particular legal issue.  *Hurtado v. Super. Ct.*, 11

9   Cal.3d 574, 579 (1974).  "California has specifically rejected the alternative 'place of the wrong'

10  rule."  *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010).  "As a default, the law

11  of the forum state will be invoked, and the burden is with the proponent of foreign law to show

12  that the foreign rule of decision will further the interests of that state."  *Id.*  (applying California

13  law to dispute over ownership where no evidence that California law and Virginia law conflict).

14       In the choice-of-law analysis, "the burden [is] on defendants to fulfill the three-step

15  governmental interest test, […] by 'exhaustively detail[ing] the ways in which California law

16  differs from the laws of the [ ] other jurisdictions in which class members reside.'"  *Farar v.*

17  *Bayer AG*, Case No. 14-CV-04601-WHO, 2017 WL 5952876, at *16 (N.D. Cal. Nov. 15, 2017)

18  (finding Defendants failed to meet burden to show foreign law, rather than California law,

19  applied).  "The fact that two or more states are involved does not itself indicate that there is a

20  conflict of law problem."  *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, Case No. C-13-1803

21  EMC, 2013 WL 4530470, at *11 (N.D. Cal. Aug. 26, 2013).  The "choice of law inquiry **ends at**

22  **step one** of the governmental interest analysis" where the laws of California and other forums do

23  not differ.  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080–81 (9th Cir. 2009) (emphasis supplied).

24       The first prong of the test is an assessment of whether the laws of California differ from

25  those of the other interested jurisdictions.  *CRS Recovery, Inc.*, 600 F.3d at 1142.  The Airline

26  Defendants summarily declare there is a difference between the laws of Canada, Texas, and

27  California (tautologically pointing out that the statutes of California are not the statutes of Canada

28  or Texas), but do not cite any authority for why such difference is relevant or material, absent a

1    conflict.  Motion at p. 8.  Where a proponent of another forum's law has "offered no evidence of

2    the relevant law in Panama, Canada, or any other relevant jurisdiction, and thus has not

3    established that there is any material difference in the relevant law," they will fail to meet their

4    burden to show law other than the forum state's law applies.  *Tasion Commc'ns, Inc.*, 2013 WL

5    4530470, at \*12.  Indeed, the Airlines Defendants do not identify ***any*** foreign statute that is in

6    conflict with the California laws Plaintiff invokes.  Thus, the Airline Defendants have failed to

7    carry their burden to "exhaustively detail" the ways in which California law differs from the laws

8    of other jurisdictions.  *Farar*, 2017 WL 5952876, at \*16.

9         Regarding the tort-based causes of action (Intentional and Negligent Infliction of

10   Emotional Distress, Assault, and Battery), the Airline Defendants concede that neither Texas nor

11   Ontario law differs materially from California law, Motion at p. 8, n. 3, and thus this Court must

12   apply California tort law as the law of the forum state.

13        Because the Airline Defendants have identified no actual conflict of laws, their citation to

14   cases where courts found conflicting laws and weighing differing policy interests are of no

15   moment.  For instance, the Defendant Airlines' citation to *Hernandez v. Burger* involved the

16   question of whether California or Mexico's damages limitations would apply, whereas here

17   Defendants do not specify the relevant law they believe should apply instead of California's, or

18   explain how it is materially different, so no conflict exists.  102 Cal. App. 3d 795, 804 (1980).

19   Similarly, in *Kasel v. Remington Arms Co.* the court concluded that California's law which

20   permits strict liability in tort would govern a claim for an injury that occurred in Mexico rather

21   than Mexico's law which did not permit recovery pursuant to strict liability, a conflict that is not

22   present here.  24 Cal. App. 3d 711, 732 (1972) (foreign nation's interest in applying its law is

23   diminished where none of its citizens are a party to the suit, even where it is the site of injury).

24        Since the Airline Defendants have failed to establish the existence of a conflict of laws

25   and have failed to identify what specific law they believe should apply to Plaintiff's claims, there

26   is no conflict of law to analyze and the law of the forum state should be applied.

27   ///

28   ///

1

        **3.**   <u>**No Due Process Rights are Offended by Holding a California Defendant**</u>

2

        <u>**Liable under California Law for California Conduct.**</u>

3         As a corporation headquartered in California, employing a California employee and agent,

4   Virgin has a significant aggregation of contacts with California.  Accordingly, holding it

5   accountable for the actions of its agents under California law is neither arbitrary nor unfair.

6         To act within the bounds of due process, a state properly applies its substantive law in

7   cases where it has significant contacts with the matter before it, such that choice of its law is

8   "neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818

9   (1985).  "Only in a 'rare case' are due process concerns such that a court cannot constitutionally

10   apply forum law." *Thompson*, 2008 WL 11398932, at *4.

11         Under a due process analysis, "for a State's substantive law to be selected in a

12   constitutionally permissible manner, that State must have a significant contact or significant

13   aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor

14   fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981); *see also* U.S.

15   Const. amend. XIV ("Due Process Clause").  The Constitution's Due Process Clause invalidates

16   application of a state's law only where the state has "no significant contact or significant

17   aggregation of contacts, creating state interests, with the parties and the occurrence or

18   transaction." *Id.* at 308, 320.  Due process constraints on the application of a state's law are not

19   limited by the place of Plaintiff's injury.  *AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d

20   1106, 1112 (9th Cir. 2013).  "In-state conduct that causes out-of-state injuries can be relevant to a

21   due process analysis." *Id.*  "[C]onduct by a defendant within a state that is related to a plaintiff's

22   alleged injuries and is not 'slight and casual' establishes a 'significant aggregation of contacts,

23   creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'"

24   *Id.* at 1113 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)).  "The 'relevant

25   transaction or occurrence' for purposes of a due process analysis is therefore informed, at least in

26   part, by the scope of conduct that gives rise to liability under the relevant statutes." *Id.* at 1110

27   (holding that it was reversible error to deny the application of California's law to out of state

28   purchases without an examination of California conduct by the defendant).

14

1      The conduct that gives rise to the Airline Defendants' liability under the Civil Rights

2  statutes is also the conditions that create the scope of Dinnis's employment for respondeat

3  superior liability: the knowledge of Dinnis's history of assaulting women business associates in

4  work settings, and the Airline Defendants' California action of sending Dinnis to a networking

5  function where he would be in a position to assault vulnerable women while carrying out the

6  Airline Defendants' networking goals.  Dinnis's was employed in California, for a California

7  employer, and he was dispatched from California within the scope of his employment to attend

8  networking events including the one where he assaulted Plaintiff.

9      The Airline Defendants' citation to *Lauritzen v. Larsen*, which involved "foreign

10  transaction between foreigners in foreign ports" is illustrative of how remote a conflict must be in

11  order to offend due process, as opposed to the present instance of a California defendant being

12  called to answer for the wrongdoing of its California employee and agent.  345 U.S. 571, 590

13  (1953) (suit by Danish seaman against Danish owner of Danish vessel brought in New York).

14  The Airline Defendants' citation to *Campbell v. Arco Marine, Inc*. does not suggest a different

15  finding, as that case was decided at summary judgment after the development of a full factual

16  record failed to show anything but the slightest California conduct, whereas here Plaintiff has

17  alleged that Virgin, whose principal place of business is in California, employed Dinnis while he

18  was a resident of California and sent him on the business networking trip in question from

19  California.  42 Cal.App.4th 1850 (1996).

20      Nor is the Airline Defendants' citation to *Norwest Mortg., Inc. v. Superior Court*

21  illuminating, because there the UCL claims were dismissed when the facts demonstrated that non-

22  Californians were injured by conduct occurring outside of California's borders by defendants

23  whose headquarters and principal places of operation were also outside of California.  72 Cal.

24  App. 4th 214, 227 (1999).  Here, in contrast, Virgin's principal place of operation is in California

25  and Dinnis was a California resident while he was their employee.

26      Because no due process rights are offended by holding a California defendant liable under

27  California law for its California conduct, Defendants' Motion cannot be sustained.

28  ///

15

1    IV.    **CONCLUSION**

2            For the reasons set forth herein, the Airline Defendants' Motion should be denied in its

3    entirety.  In the event this Court grants any part of the Motion, Plaintiff hereby seeks leave to

4    amend to correct any perceived deficiencies.

5
        Dated: June 21, 2018                              ANDRUS ANDERSON LLP
6

7
                                               By:  _____/s/ Lori E. Andrus_____
8                                                          Lori E. Andrus

9                                                  Lori E. Andrus (SBN 205816)
10                                                 lori@andrusanderson.com
                                                   Jennie Lee Anderson (SBN 203586)
11                                                 jennie@andrusanderson.com
                                                   Paul Laprairie (SBN 312956)
12                                                 paul.laprairie@andrusanderson.com
                                                   ANDRUS ANDERSON LLP
13                                                 155 Montgomery Street, Suite 900
                                                   San Francisco, CA 94104
14                                                 Phone:    (415) 986-1400
                                                   Fax:      (415) 986-1474
15                                                 *Attorneys for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28