PAUL J. BYRNE (State Bar No. 190860)
JOHN C. BROWN (State Bar No. 195804)
**CORNERSTONE LAW GROUP**
351 California Street, Suite 600
San Francisco, CA 94104
Tel: (415) 357-2094
Fax: (415) 974-6433
E-Mail:  pbyrne@cornerlaw.com
E-Mail:  jbrown@cornerlaw.com

Attorneys for Defendants
VIRGIN AMERICA, INC, and
ALASKA AIR GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>VIRGIN AMERICA, INC, ALASKA AIR GROUP, INC. and STUART DINNIS,<br><br>　　　　　　　Defendants. | Case No.  4:18-CV-02420-DMR<br><br>**DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date: July 12, 2018<br>Time: 11:00 a.m.<br>Courtroom: 4 – 3rd Flr.<br>Judge: Hon. Donna M. Ryu |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 1

    A. Plaintiff, a Texas Citizen, Cannot Claim Rights Under California Statutes Based on Alleged Wrongful Conduct in Canada ........................................ 1

        (i) Due Process Constrains California's Application of its Statutes ................................................................................................................. 1

        (ii) Courts Presume California Statutes Do Not Apply Extraterritorially ........................................................................................ 4

        (iii) California's Conflict-of-Law Rules Also Prevent Application of the California Statutes in This Case ...................................... 4

    B. The Airline Defendants Are Not Directly Liable to Plaintiff .................................. 6

    C. The Airline Defendants Cannot Be Vicariously Liable for Dinnis' Wrongful Conduct Directed at Plaintiff Because, as a Matter of Law, the Conduct Was Outside the Scope of Dinnis' Employment ........................ 8

III. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ............................................................................. 2, 3

*AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) ..................................... 3

*Billings v. U.S.* 57 F.3d 797, 801 (9th Cir. 1995) ............................................................................. 11

*Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th 1850 (1996) ............................................................. 3

*Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036 (1999) ................................ 4

*Doe v. Capital Cities*, 50 Cal.App.4th 1038 (1996) ....................................................................... 7, 8

*Doe v. Uber Technologies, Inc.*, 184 F.Supp.3d 774 (2016) ............................................................. 11

*Farar v. Bayer AG*, Case No. 14-CV-04601-WHO, 2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) ......................................................................................................................... 5

*Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992 (1995) ..................................... 7, 9, 10

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.4th 291 (1995) ............................................ 8, 9

*Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ......................................... 5

*McCarty v. Workmen's Comp. Appeals Bd.*, 12 Cal.3d 677 (1974) ................................................. 10

*Myers v. Trendwest Resorts, Inc.*, 148 CA4th 1403 (2007) ................................................................ 6

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999) ......................................... 3, 5

*Paulsen v. CNF Inc.*, 559 F.3d 1061 .................................................................................................. 5

*Precht v. Kia Motors Am., Inc.*, Case No. SACV141148DOCMANX, 2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) ............................................................................... 4

*Purton v. Marriott Int'l, Inc.*, 218 Cal. App. 4th 499 (2013) ............................................................ 10

*Shultz Steel Co. v. Hartford Accident & Indemnity Co.*, 187 Cal.App.3d 513 (1986) ......................... 7

*Sullivan v. Oracle*, 547 F.3d 1177 (2008) .......................................................................................... 2

*Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470 (N.D. Cal., Aug. 26, 2013, No. C-13-1803 EMC) ............................................................... 6

*Thompson v. Nat'l R.R. Passenger Corp.* No. C 08-03280 CRB, 2008 WL 11398932 (N.D. Cal. Dec. 17, 2008) ......................................................................................... 2

*Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010) .............................................................................. 10

*Yamaguchi v. Harnsmut*, 106 Cal.App.4th 472 (2003) ................................................................... 10

**Statutes**

California Civil Code § 51.7(a)........................................................................................................... 1

California Civil Code § 52.1 .............................................................................................................. 1

**Other Authorities**

*Cal. Prac. Guide Employment Litigation*, 5:885 (2017)...................................................................... 6

Restatement (Second) of Agency § 219(2)(d) .................................................................................... 6

## I. INTRODUCTION

Nothing in Plaintiff's Opposition to the Airline Defendants' Motion to Dismiss changes the analysis the Airline Defendants set forth in support of this motion.

Both due process and the presumption against extraterritorial application of California law prevent the Court from applying this state's statutory law, because any alleged wrongful conduct occurred outside California.

Further, as explained below, there is no basis to hold the Airline Defendants liable for Dinnis' conduct, which was clearly personal in nature and unrelated to the business enterprise of the Airline Defendants.

For these reasons, the Court should grant the Airline Defendants' Motion to Dismiss without leave to amend.

## II. ARGUMENT

### A. Plaintiff, a Texas Citizen, Cannot Claim Rights Under California Statutes Based on Alleged Wrongful Conduct in Canada

Due process considerations and California's presumption against extraterritorial application of its statutes prevent their application. And, even if California could apply the statutes, it would forego doing so in this case.

#### (i) Due Process Constrains California's Application of its Statutes

The Airline Defendants' opening Memorandum of Points and Authorities ("MPA") explains why due process prevents California's application of its statutory law to out-of-state conduct. *Id.*, 6:5-18. Apparently recognizing this principle, Plaintiff now claims that the Airline Defendants' wrongful conduct took place in California. Plaintiff's change in position begs a review of the relevant statutes (collectively, the "Civil Rights statutes") and of her allegations.

California Civil Code § 51.7(a) (the "Unruh Civil Rights Act") and California Civil Code § 52.1 (the "Ralph Civil Rights Act") proscribe heinous gender-based "violence" and "intimidation." The Civil Rights statutes themselves neither proscribe employing a person who allegedly previously kissed or groped someone nor prohibit sending that person on a business trip where he might interact with others.

Understanding these points, Plaintiff alleged in her Complaint that the Airline Defendants violated the Civil Rights statutes because "Dinnis committed violence, or intimidation by threat of violence." Complaint, ¶ 107. The Complaint does not allege that the Airline Defendants' employing Dinnis or sending him to a mixed company conference is actionable under these statutes.

But to avoid dismissal of the statutory claims, Plaintiff argues now that the Airline Defendants' wrongful conduct was "determin[ing] the course and scope of Dinnis' employment to include attending networking events where he was known to drink and accost women … and … [dispatching] Dinnis" from California. Motion to Dismiss, 11:16-19; *see also* 15:1-6. This amounts to the incredible argument that the Airline Defendants' wrongful conduct triggering violation of the Civil Rights statutes prohibiting violence and intimidation was making the decisions to employ Dinnis and send him to a networking event where he would be in the company of others. The Civil Rights statutes do not make these types of decisions wrongful or actionable. Therefore, as Plaintiff alleges in her Complaint, any wrongful conduct must have occurred where the violence and intimidation occurred, outside California. Following this point, Plaintiff would have to produce authority standing for the proposition that California can apply its statutory law when a non-resident alleges wrongful conduct and injury outside California. No such authority exists.

Plaintiff does, however, attempt to create such authority. Plaintiff quotes *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) for the proposition that "the Constitution's Due Process Clause invalidates application of a state's law only where the state has 'no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction.'"[1] Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opp."), 14:15-18. In fact, while "significant contact" is the *sine qua non* of constitutional application of a state's law, *Allstate* did not hold that "significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction" means that application of the state law is consistent with

---

[1] Plaintiff also cites the unpublished district court opinion *Thompson v. Nat'l R.R. Passenger Corp*. No. C 08-03280 CRB, 2008 WL 11398932, at *4 (N.D. Cal. Dec. 17, 2008) for the argument that due process constitutionally prevents a forum from applying its own law in "rare cases" only. *Thompson* cited *Sullivan v. Oracle*, 547 F.3d 1177, 1186 (2008) for that position, but Plaintiff overlooked that *Sullivan* was withdrawn two months after the *Thompson* opinion was issued, thereby rendering *Thompson's* analysis questionable, if not useless.

due process.

More to the point, while "[i]n-state conduct that causes out-of-state injuries can be relevant to a due process analysis" (Opp., 14:20-21), Plaintiff misleads in partially quoting *AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) for the proposition that "conduct by a defendant within a state that is related to a plaintiff's alleged injuries and is not 'slight and casual'" permits application of the state's law consistent with due process. The *AT & T Mobility LLC* opinion held that *wrongful* (e.g., anticompetitive) conduct within a related state creates such contacts. *Id.* at 1113. This distinction is crucial: the Airline Defendants acknowledge that violence and intimidation in California would create sufficient California contacts to enable application of the Civil Rights statutes. Violence and intimidation are quite different than sending a man on a business trip. Following these points, neither Civil Rights statute addresses the Airline Defendants' conduct that occurred in California, and Plaintiff therefore alleges no wrongful conduct in California.

Finally, it bears noting that the Airline Defendants' cases are directly on point. *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999) held that application of California law is "arbitrary and unfair and transgress[es] due process limitations" if the only contact between the claims and California is the defendant's state of incorporation and the injuries and injury-producing conduct occurred outside California. *Id.* at 227.

Similarly, *Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th 1850, 1858–1859 (1996) is a harassment case involving facts similar to those in the instant action. Plaintiff was a resident of another state, employed by a California company. She performed most work on the high seas, where most of the harassment of which she complained took place. Based on these facts, the Court found "the relationship with California is slight." Moreover, the Court held that, even though "the decision concerning how to discipline [the attacker] for his prior outbursts and [a prior incident] was either made or ratified in Long Beach … Applying the [California statute] in this situation would raise serious constitutional concerns." "The Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Id.* at 1858. (citations omitted) *Campbell* is mandatory authority that is directly on point, and it compels dismissal of Plaintiff's statutory claims on due

**DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS (CASE NO. 4:18-CV-02420-DMR)**   3

process grounds.

For all of these reasons, Plaintiff's statutory claims must be dismissed.

### (ii) Courts Presume California Statutes Do Not Apply Extraterritorially

Plaintiff cites one case, *Precht v. Kia Motors Am., Inc.*, Case No. SACV141148DOCMANX, 2014 WL 10988343, at *5 (C.D. Cal. Dec. 29, 2014) to support her position that California statutory law applies when a California-based corporation makes a decision in California and the decision has extraterritorial effect.[2] But *Precht* is readily distinguishable, because the decision itself – to send false information to consumers across the country – was the very wrongful conduct to which the law pertained. Here, on the other hand, Virgin's decisions to employ Dinnis and send him to a conference is not covered by the statutes at issue. Any wrongful conduct occurred outside California, and the presumption against extraterritorial application of California law is therefore in full force and effect.

### (iii) California's Conflict-of-Law Rules Also Prevent Application of the California Statutes in This Case

Because both due process and the presumption against extraterritorial application of California statutory law prevent application of the California statutes, the Court has no occasion to even perform a conflicts analysis. *See Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th at 228 ("[W]hen California law cannot be applied to the claims held by nonresident[s] …, there is no occasion for applying the choice of law rules to decide whether California's or another jurisdiction's law should govern."). The governmental interest test is therefore irrelevant. But assuming, *arguendo*, California could apply its statutes to conduct in Canada that injured a Texan, it would forego doing so.

The lynchpin of Plaintiff's argument for application of the California statutes under the governmental interest test is that the Airline Defendants "conceded no conflict exists," so California law must apply. Opp., 12:3. Plaintiff makes this argument because the Airline Defendants did not

---

[2] The other authority Plaintiff cites, *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036, 1059 (1999), simply stands for the proposition that the presumption against extraterritorial application does not apply to wrongful California conduct.

differentiate the California statutes from every potentially applicable statute of Ontario and of Texas.[3] This argument fails.

The governmental interest test applies to resolve conflicts when a claim – such as one for assault or battery - can be made under the laws of any number of different jurisdictions. Indeed, Plaintiff's cases consider common law claims that could be made under either of the different interested jurisdictions. *See, e.g., Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (comparing California and Oregon negligence law); *Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at *1 (N.D. Cal., Aug. 26, 2013, No. C-13-1803 EMC) (addressing laws of interested jurisdictions regarding negligence and negligent misrepresentation claims).

Here, there is no foreign law to consider, because neither foreign jurisdiction has an Unruh Civil Rights Act or Ralph Civil Rights Act. Nor does Plaintiff suggest there is any similar foreign law. Plaintiff does not – and cannot – cite any case standing for the proposition that a California court must do a conflicts analysis to determine whether its statute is materially distinct from a non-existent foreign statute. Therefore, the issue of whether or not the California statutes apply is material.

Following this point, the only issue (assuming, *arguendo,* that California could apply its statutes) is whether California would choose to apply the Civil Rights statutes. As the Airline Defendants explain in their MPA, California would choose to refrain from applying its statutes to help Plaintiff vis-à-vis the California-based corporation Virgin America.

Finally, it bears noting that, if a materially indistinct Texas statute existed, Plaintiff surely would have sued in Texas (as the parties agree that the common law claims are materially indistinct in the interested jurisdictions). The Court should not reward Plaintiff for forum shopping for a law that punishes California corporations for another person's extraterritorial conduct.

---

[3] Plaintiff quotes *Farar v. Bayer AG*, Case No. 14-CV-04601-WHO, 2017 WL 5952876, at *16 (N.D. Cal. Nov. 15, 2017) for the proposition that "the burden [is] on defendants to fulfill the three-step governmental interest test, […] by 'exhaustively detail[ing] the ways in which California law differs from the laws of the [ ] other jurisdictions in which class members reside.'" Opp., 12:14-17. *Farar* does not state that. Rather, *Farar* simply references a case in which the defendants did indeed "exhaustively detail … [differences]." *Id.*, citing *Mazza v. American Honda Motor Co., Inc*., 666 F.3d 581, 289 (9th Cir. 2012). No case Plaintiff cites requires such exhaustive detail to demonstrate a conflict.

### B. The Airline Defendants Are Not Directly Liable to Plaintiff

Dinnis did not trigger the Airline Defendants' direct liability by accosting Plaintiff, because he did not act with the authority of Virgin in doing so.

"Under [the direct liability] theory of agency, an employer may be liable when a supervisory employee uses the authority of his position to sexually harass an employee." *See Myers v. Trendwest Resorts, Inc.*, 148 CA4th 1403, 1434-1435 (2007). Direct employer liability is *only* appropriate "where the employer has conferred actual or ostensible authority upon the employee to commit [the torts]" or ratified the acts. *See* Byron, et al., *Cal. Prac. Guide Employment Litigation*, 5:885 (2017); *see also Shultz Steel Co. v. Hartford Accident & Indemnity Co.*, 187 Cal.App.3d 513, 519 (1986).

Plaintiff does not allege that Dinnis used job-conferred authority, whether actual or ostensible, to facilitate his assault of Plaintiff, nor does Plaintiff allege Virgin America ratified the attack. Plaintiff alleges that Dinnis thought he could get away with the assault based on his employment with Virgin America, but that is not the same as attacking under the cloak of employer-conferred authority.

Plaintiff's citations do not help her position on direct liability. She cites the Restatement (Second) of Agency § 219(2)(d) for her argument that "a principal is subject to [direct] liability for the torts of an agent [whenever] the agent 'was aided in accomplishing the tort by the existence of the agency relation.'" Opp., 8:18-20. Plaintiff cites no California authority for this position, and the Airline Defendants' counsel has found no California authority supporting an argument that the agency relation aided the attack because the employee believed his employment made it less likely his victim would complain about the attack. Underscoring this point, the Court should distinguish between the employer conferring authority to facilitate the attack from the assailant forming a belief - *without reference to anything the employer has done* – that the fact of employment somehow helped him avoid getting caught.

Plaintiff cites one case, *Doe v. Capital Cities*, 50 Cal.App.4th 1038 (1996) ("*Capital Cities*"), for her proposition that the Airline Defendants are directly liable for Dinnis' attack. *Capital Cities* addressed an assault by a supervisor of an employment applicant. *Capital Cities* begins its discussion by noting plaintiff's abandonment of the tort claims (assault, battery, emotional distress), given the

(then-recently decided) decisions in *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992 (1995) ("*Farmers*") and *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.4th 291 (1995). In doing so, *Capital Cities* affirms the principle that the employer is not liable in tort for an employee's sexual assault, absent exceptional circumstances not present here.

Because Plaintiff voluntarily abandoned the tort claims, *Capital Cities* did not address the employer's potential liability under the common law. Rather, it addressed the employer's direct liability under the Fair Employment and Housing Act ("FEHA"). The first reason *Capital Cities* is readily distinguishable is that "an employer's liability under the [FEHA] for an act of sexual harassment committed by a supervisor or agent is broader than the liability created by the common law principle of *respondeat superior*." *Id.* at 1048. Given the differing standards for determining an employer's liability under the FEHA and under the common law, *Capital Cities* cannot be read to support the Airline Defendants' *respondeat superior* liability argument.

*Capital Cities* is also distinct because it found that the employer conferred ostensible authority on the assailant so as to trigger potential liability. *See Id.* at 1052. In that case, a casting director latched on to an aspiring male actor. He spent hours each day over a period of weeks working to kickstart the actor's career. On several occasions, the casting director told the actor, "I'm your manager." *Id.* at. 1043. Then, the casting director invited the actor to his house to ostensibly meet executives and further his career. *Ibid.* Upon arriving at the casting director's home, the plaintiff was attacked. *Ibid*. Under these facts, the defendant employer in *Capital Cities* was found to have enabled the director to exercise his authority to compel the plaintiff to accompany him to a place where the assault could occur, such that the employer could be liable under FEHA for the director's harassment. *Ibid*.

Dinnis, on the other hand, did not use job-conferred authority to facilitate his alleged assault of Plaintiff. Rather, Dinnis waited for Plaintiff in a hotel lobby (Complaint, ¶ 19), followed her into an elevator (Complaint, ¶ 20), and followed her to her room (Complaint, ¶ 29). Instead of using job-related authority to lure Plaintiff into a position of harm as in *Capital Cities*, Dinnis pursued Plaintiff, whom he had just met, which he could have done regardless of any authority conferred on him by the Airline Defendants. Dinnis' authority in no way facilitated the assault, other than to the extent that

Dinnis met Plaintiff by the employment, which by itself is insufficient to trigger the Airline Defendants' liability for Dinnis' conduct.

Finally, no court has ever held that an employer can be liable simply because the victim can allege that the employee believes the victim is less likely to complain because of the fact of employment.[4] For these reasons, the Airline Defendants are not directly liable for Dinnis' assault of Plaintiff under the facts of this case.

### C. **The Airline Defendants Cannot Be Vicariously Liable for Dinnis' Wrongful Conduct Directed at Plaintiff Because, as a Matter of Law, the Conduct Was Outside the Scope of Dinnis' Employment**

The error in Plaintiff's position that the Airline Defendants are vicariously liable for Dinnis' assault based on *respondeat superior* is best demonstrated by the self-refuting nature of Plaintiff's central argument that the assault occurred within the scope of Dinnis' employment.

In section III.B.3 of her brief, entitled "The Other Cases on Which the Airline Defendants Rely Do Not Change the Outcome," Plaintiff attempts to distinguish the Airline Defendants' cases demonstrating their non-liability. Plaintiff begins by discussing *Farmers*, wherein the California Supreme Court found that sexual harassment was "personal in nature" and unconnected to the business purposes of operating a jail and, therefore, fell outside the scope of employment as a matter of law. *Id.* at 1007-1008. Plaintiff pronounces that *Farmers* is distinguishable from her allegations on the facts. But Plaintiff provides no explanation as to how or why an airline company employee attacking a potential business partner employee is connected to the business purpose of creating loyalty for those frequently using the airline. If Dinnis attacked Plaintiff because she was less likely to complain, as Plaintiff alleges, then Dinnis knew Plaintiff did not want to be attacked. And, if he knew she did not want to be attacked, then the attack could not possibly have furthered Virgin America's business purpose of enhancing its loyalty program, which was Dinnis' responsibility. Thus, Plaintiff's argument that Dinnis' attack is within the scope of employment based on the

---

[4] *See, e.g., Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.4th 291 (1995) finding that the vicarious liability of a private employer in California does not turn on the vulnerability of the victim. *Id.* at 302 n.6

DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR GROUP, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS (CASE NO. 4:18-CV-02420-DMR)   8

*Farmers'* factors is self-refuting and meritless.

Therefore, Dinnis "substantially deviate[d] from the employment duties for personal purposes" when he engaged in conduct that undermined any networking he was doing for Virgin America. *See Farmers Ins. Group,* 11 Cal.4th at pp. 1003-1005. Plaintiff counters with two cases suggesting that conduct precipitated by employer-endorsed employee drinking falls within the scope of employment. But *McCarty v. Workmen's Comp. Appeals Bd.*, 12 Cal.3d 677 (1974) simply held that the employer was estopped to raise a statutory defense of intoxication after encouraging its employee to drink. *Id.* at 684. *Purton v. Marriott Int'l, Inc.*, 218 Cal. App. 4th 499 (2013) is distinguishable in that dangerous drunk driving could have been anticipated after the company's alcohol-based party. But an attack of the nature Plaintiff alleges would not be foreseeable.[5]

Because Plaintiff's own argument demonstrates that the attack was personal and unconnected to Virgin America's business enterprise, the question becomes whether *respondeat superior* liability should attach on policy grounds. *See Yamaguchi v. Harnsmut*, 106 Cal.App.4th 472, 481 (2003) (*Respondeat superior* analysis comes down to public policy concerning who should bear the risk of harm created by the employer's enterprise.) The Airline Defendants addressed the policy factors in their MPA, 13:11-14:4, explaining: (1) the deterrent effect of FEHA training makes the imposition of tort liability of little value in recurrence prevention; (2) the negligent retention remedy assures compensation if the allegations are accurate; and, (3) loss-shifting to the Airline Defendants, which could not have possibly benefitted by Dinnis' attack of Plaintiff, is inequitable.

The Opposition fails to address these policy factors. Nowhere does Plaintiff attempt to explain why imposition of *respondeat superior* liability here does any more to prevent future injuries than FEHA training. Nowhere does she explain why the negligent retention remedy is inadequate to assure compensation. And, Plaintiff effectively admits that the attack undermined Virgin America's business purpose, undercutting any argument that imposing liability on the Airline Defendants for six different claims could be equitable.

---

[5] To the extent Plaintiff claims Dinnis' alleged prior conduct made the attack foreseeable, she has her negligent retention remedy. But a decision by this Court that Virgin America's negligence in failing to terminate Dinnis' employment based on prior groping and kissing leads to the panoply of additional liabilities for which Plaintiff advocates would be unprecedented.

Plaintiff relies heavily on *Doe v. Uber Technologies, Inc.*, 184 F.Supp.3d 774 (2016) ("*Uber*"), but she provides no explanation as to why the *Uber* facts are more analogous to the present case than those in the many decisions finding that sexual harassment is outside the scope of employment as a matter of law. Judge Illston assessed the propriety of allowing the *Uber* plaintiff to go forward and explained why, given the facts before her, the policy factors could support liability. *Id.* at 785. Specifically, Judge Illston concluded that "[h]olding Uber liable could also forward the underlying policy goals of *respondeat superior*, including prevention of future injuries [by encouraging Uber to perform background checks]," which are sensible given the Uber drivers' unique ability to use job-conferred authority to lure potential victims. *Ibid.* That is not the case here. Judge Illston also recognized that the "shuttling [of] customers in private cars" may justify an equitable spreading of the losses. *Ibid.* Again, the facts here stand in stark contrast to those in *Uber*, which render its rationale inapplicable. Further, the distinction between the danger imposed by an Uber driver, who may use job-conferred authority to lure potential victims into a car tracked by Uber and then drive to an isolated location from which escape may not be possible, and the danger imposed by employees drinking and meeting others at work conferences, renders Plaintiff's reliance on *Uber* unpersuasive.  For these reasons, *Uber* is factually distinguishable from the case at bar and does not apply as Plaintiff suggests.

The other case on which Plaintiff heavily relies, *Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010), is similarly distinguishable. There, a federal immigration officer's solicitation and molestation of asylum applicants, although unauthorized, was a foreseeable risk in the asylum process. The employer could have anticipated that the officer might use his considerable government authority to grant or deny asylum to take advantage of an eager asylum applicant's desperate situation.  In contrast, Dinnis neither had nor used any such guise of authority when he pursued, not lured, Plaintiff to her hotel, into the elevator and to her room.

Because Dinnis acted outside the scope of employment, the question becomes whether the Court can dismiss the claims founded on *respondeat superior* liability on a pleadings' motion.

First, contrary to Plaintiff's claim, *Uber* does not state that the issue of "whether an employee who commits a sexual assault was acting within the scope of employment … should not be

determined at the pleading stage as a matter of law." *See* Opp., 6:3-5. Judge Illston's finding was limited to the allegations of that case. Indeed, *Uber* and Plaintiff's other cases recognize that "the issue of scope of employment is a question of fact, but becomes a question of law when the facts are undisputed and no conflicting inferences are possible." *Billings v. U.S.* 57 F.3d 797, 801 (9th Cir. 1995); *see also, e.g., Farmers Ins. Group, supra*, 11 Cal.4th at 1019; *Yamaguchi v. Harnsmut*, 106 Cal.App.4th 472, 486 (2003). Here, because the facts are undisputed and there are no conflicting inferences, the issue of whether Dinnis' attack fell within the scope of employment can be determined at the pleadings stage as a matter of law. Because the attack was outside the scope of employment, imposing *respondeat superior* liability is improper.

### III.   CONCLUSION

Plaintiff cannot apply the Civil Rights statutes to conduct she alleges occurred outside California. Further, Dinnis' attack, which was clearly personal in nature and unrelated to the business enterprise of the Airline Defendants, does not subject the Airline Defendants to direct or vicarious liability. For these reasons, the Court should grant the Airline Defendants' Motion to Dismiss without leave to amend.

DATED: June 28, 2018

Respectfully submitted,
CORNERSTONE LAW GROUP


   /s/ Paul J. Byrne
   /s/ John C. Brown
PAUL J. BYRNE
JOHN C. BROWN
Attorneys for Defendants
VIRGIN AMERICA, INC. and ALASKA AIR GROUP, INC.

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on June 28, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on CM/ECF system.

DATED this 28th day of June, 2018.

                                              /s/ Paul J. Byrne
                                              PAUL J. BYRNE