UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>    v.<br><br>VIRGIN AMERICA, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-02420-DMR<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 15 |

Defendants Virgin America, Inc. ("Virgin") and Alaska Air Group, Inc. ("Alaska"; together, the "Airline Defendants") move to dismiss portions of Plaintiff Jane Doe's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 15.] The court held a hearing on September 13, 2018. For the following reasons, the motion is granted in part and denied in part.

**I.    BACKGROUND**

    **A.    Plaintiff's Allegations**

Doe makes the following allegations in the complaint, all of which are taken as true for purposes of this motion.[1] Doe is an adult woman residing in Texas. Virgin is a Delaware corporation with its principal place of business in Burlingame, California. Alaska is an Alaska corporation with its principal place of business in Seattle, Washington, and is the parent company of Virgin. Compl. ¶¶ 2, 3, 8. Stuart Dinnis is an adult man residing in Australia. At the time of the incident that forms the basis of the complaint, Dinnis was employed by Virgin and resided in California. *Id.* at ¶ 7.

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

In the fall of 2016, Doe was a Vice President for Research Now, which is "a global expert in online market research data." Doe's job responsibilities included "building and maintaining key strategic relationships with loyalty professionals, including airline executives." *Id*. at ¶ 13. In October 2016, Doe and her boss traveled to the Mega Loyalty Conference in Toronto, Canada, which "attracted professionals in the travel and loyalty sector from around the world," including Dinnis, who was then Virgin's Director of Loyalty. *Id*. at ¶ 14.

On October 24, 2016, Doe conferred with her boss about their objectives for the conference, and identified Dinnis as "a key player with whom [Doe] should meet." At a conference-related party that night, Doe introduced herself to Dinnis. He subsequently approached Doe on the dance floor and was "noticeably drunk," and later spilled a drink on Doe. *Id*. ¶¶ 15-18. Doe and her colleagues returned to their hotel in a taxi. When they arrived at the hotel, Dinnis was waiting for Doe in the lobby. Doe alleges that "Dinnis knew that, given [Doe's] position with Research Now, and her need to preserve their professional relationship, she would be reluctant to react in a way that could harm her company's relationship with a major client like Virgin," and that Dinnis was "[i]ntent on exploiting [Doe's] professional vulnerability." *Id*. at ¶¶ 18, 19.

Dinnis followed Doe into an elevator and began to "aggressively kiss[] her and would not stop." *Id*. at ¶¶ 20-22. When the elevator stopped at Dinnis's floor, he tried to physically pull Doe from the elevator by her neck and hair. She resisted, and Dinnis got back on the elevator and resumed his assault. *Id*. at ¶¶ 23-25. Dinnis then followed Doe off the elevator and to her room, and when they reached her room, he grabbed her by the neck and tried to follow her into her hotel room. *Id*. at ¶¶ 26-29. Doe fought off Dinnis and yelled out several times, and he finally walked away, leaving Doe "shaking and terrified." *Id*. at ¶¶ 30-33.

Dinnis messaged Doe later that night, stating, "Are you sure? I have a suite if you're keen. xx." *Id*. at 36. He sent her additional messages the following morning, to which Doe responded that "it's best if we keep things strictly professional." *Id*. at ¶¶ 37, 38. Dinnis later messaged Doe, apologizing for his behavior and commenting on her attractiveness. He also sent her a photo of Doe's earring, which he had found hanging on his jacket. *Id*. at ¶¶ 39. Doe alleges that since the

assault, she has "experienced high anxiety while travelling, particularly in elevators," and subsequently left her position with Research Now, which required her to regularly travel alone. *Id*. at ¶ 40.

Doe alleges that "Virgin was well aware that Dinnis was known for carrying out lewd and drunken behavior in front of business associates and other Virgin employees, and sexually assaulting business associates, but did nothing to stop his unlawful behavior." *Id*. at ¶¶ 42. For example, in November 2015, at an event hosted by a hotel booking company called Rocketmiles, Dinnis became intoxicated and groped a female Rocketmiles employee. In mid-2016, Dinnis groped two women at a Rocketmiles event in Chicago in front of Rocketmiles executives. The following day, "other Virgin employees apologized for Dinnis' conduct and mentioned that Dinnis had issues with drinking and respecting boundaries with women." *Id*. at ¶¶ 43, 44. According to Doe, even though Virgin had "actual knowledge of Dinnis' history of witnessed sexual assaults, Virgin did nothing to prevent the foreseeable attack on [Doe]." *Id*. at ¶ 45. Further, "Dinnis regularly carried out his predatory acts during networking business events and within the course and scope of his employment duties. Virgin could have, and should have done more to supervise, train and discipline Dinnis, and to protect [Doe]." *Id*.

Doe alleges that at all relevant times, Dinnis acted as Virgin's agent, as he "attended the functions where these events occurred in furtherance of, and for the benefit of, Virgin's business," and that "[h]is conduct at the networking events was broadly incidental to the enterprise undertaken by Virgin." *Id*. at ¶ 47. Further, the incidents "were an outgrowth of Dinnis' employment with Virgin and the risk of tortious injury presented by Dinnis' behavior at these events was inherent in the working environment." *Id*. at ¶ 48.

### B. Procedural History

On April 23, 2018, Doe filed a complaint against Virgin, Alaska, and Dinnis, alleging the following claims for relief: 1) negligent supervision and retention, against the Airline Defendants; 2) intentional infliction of emotional distress, against all Defendants; 3) negligent infliction of emotional distress, against all Defendants; 4) assault, against all Defendants; 5) battery, against all Defendants; 6) violation of the Fair Employment and Housing Act ("FEHA"), California

3

Government Code section 12940(k), against the Airline Defendants; 7) violation of the Unruh Act, California Civil Code section 51.7(a), against all Defendants; 8) violation of the Bane Act, California Civil Code section 52.1, against all Defendants; and 9) violation of California Civil Code section 52.4, against Dinnis. Doe brings claims two through eight against the Airline Defendants under a theory of respondeat superior. Compl. ¶¶ 68, 77, 86, 95.

Doe and the Airline Defendants have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. Dinnis has not appeared in this action. On August 30, 2018, the court severed Doe's claims against Dinnis, which are proceeding in a separate, related case with Dinnis as the sole defendant. [Docket No. 27.] *See Doe v. Dinnis*, Case No. C-18-cv-5393 DMR.

The Airline Defendants now move to dismiss claims two through eight.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III. DISCUSSION

The Airline Defendants move to dismiss the complaint with prejudice as to claims two

4

through eight. In her opposition, Doe concedes her sixth claim for relief for violation of FEHA. [Docket No. 17 (Pl.'s Opp'n) 3, n.3.] Accordingly, Doe's FEHA claim is dismissed with prejudice.

**A. Claims Relying on Respondeat Superior Theory**

The Airline Defendants move to dismiss claims two, three, four, five, seven, and eight, which are all brought against the Airline Defendants under the doctrine of respondeat superior. The Airline Defendants argue that they cannot be vicariously liable for Dinnis's alleged assault because his acts were outside the scope of his employment.

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment." *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 208 (1991). "In California, the scope of employment has been interpreted broadly" under the doctrine. *Farmers Ins. Grp. v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1004 (1995). "[T]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer," and "an employee's tortious act may be within the scope of employment even if it contravenes an express company rule and confers no benefit to the employer." *Id*. (quotation and citations omitted). "[T]he test for determining whether an employee is acting outside the scope of employment is whether 'in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" *Mary M.*, 54 Cal. 3d at 214 (quoting *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 968 (1986)). An employer may be vicariously liable for an employee's act if "the incident leading to injury [was] an 'outgrowth' of the employment" or if the risk of injury was "inherent in the working environment" or "typical of or broadly incidental to" the employer's business. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298 (1995) (quotations and citations omitted).

Courts also consider "the three identified policy goals of the respondeat superior doctrine—preventing future injuries, assuring compensation to victims, and spreading the losses caused by an enterprise equitably—for additional guidance as to whether the doctrine *should* be

applied in these circumstances." *Lisa M.*, 12 Cal. 4th at 304 (emphasis in original) (citing *Mary M.*, 54 Cal. 3d at 209, 214-217)). Whether an employee was acting within the scope of employment is "ordinarily" a question of fact, but "becomes a question of law . . . when 'the facts are undisputed and no conflicting inferences are possible.'" *Mary M.*, 54 Cal. 3d at 213 (quoting *Perez*, 41 Cal. 3d at 968).

Here, the Airline Defendants argue that "sexual assault is outside the scope of employment, not an outgrowth of employment, not inherent in nor typical of employment, and not foreseeable." Mot. 11-12. They argue that because "Dinnis did not serve any purpose of the Airline Defendants as a matter of law when he allegedly assaulted Plaintiff in a hotel after hours at a trade show[,]" Doe's claims against the Airline Defendants must be dismissed to the extent they are based on the doctrine of respondeat superior. *Id.* at 12.

The court must look to "whether 'in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" *Mary M.*, 54 Cal. 3d at 214. "[I]n determining whether a risk is 'unusual or startling' for respondeat superior purposes, 'the inquiry should be whether the risk was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer.'" *Farmers*, 11 Cal. 4th at 1009 (quoting *Perez*, 41 Cal. 3d at 968); *see also Xue Lu v. Powell*, 621 F.3d 944, 949 (9th Cir. 2010) ("The liability of a private employer in California does not turn on the vulnerability of the victim but on the extent to which the tort of the employee is incident to his employment." (citing *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298-99 (1995))).

As noted, the question of whether an employee acted within the scope of his or her employment is ordinarily a question of fact. *Mary M.*, 54 Cal. 3d at 213 (quotation omitted). It becomes a question of law only "when the facts are undisputed and no conflicting inferences are possible." *Id.* (quotation omitted). Courts "look[] to the foreseeability of the employee's conduct, whether it be authorized or unauthorized, tortious or criminal, because the California rule 'reflects the central justification for respondeat superior [liability]: that losses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be

allocated to the enterprise as a cost of doing business.'" *Xue Lu*, 621 F.3d at 948 (quoting *Farmers*, 11 Cal. 4th at 1004). The court finds that Doe has alleged sufficient facts supporting her claim that Dinnis was acting within the scope of his employment at the time of the alleged assault. The complaint alleges that Dinnis attended the conference in Toronto "in furtherance of, and for the benefit of, Virgin's business," and that Virgin expected him "to attend networking events and hold business meeting[s] with key partners of the loyalty program." Compl. ¶ 47. The complaint further alleges that "the risk of tortious injury presented by Dinnis' behavior at these events was inherent in the working environment," and that "[c]onsumption of alcohol at these types of events was a customary incident to Dinnis' employment with Virgin and was tolerated and ratified, if not encouraged, by Virgin." *Id*. at ¶ 48. *See also Purton v. Marriott Int'l, Inc.*, 218 Cal. App. 4th 499, 509-11 (2013) (discussing fairness of requiring commercial enterprise to bear burden of consequences of alcohol consumption where enterprise chose to allow it).

Moreover, Doe alleges that she was responsible for "building and maintaining key strategic relationships" with airline executives such as Dinnis, that Research Now's business relationship with Virgin was important, and that Dinnis was aware of her position. *Id*. at ¶¶ 13, 15, 19. She alleges that Dinnis knew that Doe would therefore "be reluctant to react in a way that could harm her company's relationship with a major client like Virgin" and was "[i]ntent on exploiting [Doe's] professional vulnerability." *Id*. at ¶ 19. While "[t]he liability of a private employer in California does not turn on the vulnerability of the victim," *Xue Lu*, 621 F.3d at 949, these facts bear on the question of whether the loss caused by Dinnis's actions should be allocated to the Airline Defendants as a cost of doing business. *See Farmers*, 11 Cal. 4th at 1004. For example, in *Xue Lu*, the plaintiffs, who were asylum applicants, filed an action against the government and an asylum officer based on the officer's demand for sexual favors and money in exchange for granting their asylum applications. 621 F.3d at 946-47. The district court dismissed the action against the government on the ground that the officer was not acting within the scope of his employment during his interactions with the plaintiffs. *Id*. at 948. While observing that "[o]bviously the United States had not employed [the officer] to prey on asylum petitioners or seek graft from their perilous predicaments," the Ninth Circuit reversed on the issue of respondeat

7

superior. *Id*. at 948-49. The court noted that "[a] nexus must exist between the employment and the tort if the employer is fairly to be held liable," and analogized the officer's actions to those of a real estate broker's submission of a fraudulent loan application. *Id*. In the case of the broker, a California court of appeal held that "[t]he risk of a fraudulent application was 'a generally foreseeable risk inherent and incidental to defendants' mortgage loan brokerage business.'" *Id*. at 949 (quoting *Inter Mountain Mortg., Inc. v. Sulimen*, 78 Cal. App. 4th 1434, 1442 (2000)). The Ninth Circuit held that "[l]ike the loan broker, [the officer] was part of a process in which he was expected to participate in a lawful way, reviewing the documentation of the asylum applicant, interviewing her, and assessing the credibility of her claims," and that in "abus[ing] his powers for his own benefit . . . he acted within the scope of his employment as defined by California." *Id*. In this case, Doe alleges a similar nexus between Dinnis's position with Virgin and his acts, as she alleges that Dinnis was aware of her "professional vulnerability" and took advantage of the imbalance of power between the two when he assaulted her. Just as the conduct of the officer in *Xue Lu* was incidental to the asylum system, Doe alleges that Dinnis's conduct was incidental to the professional networking and relationship-building that Virgin expected of him.

At the pleading stage, the allegations in the complaint are sufficient to support the conclusion that Dinnis's assault of Doe, a professional acquaintance, was incidental to Dinnis's attendance at the networking event, and "not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *See Mary M.*, 54 Cal. 3d at 214. The complaint sufficiently alleges a respondeat theory of liability to support Doe's claims based on that theory.[2]

**A. Claims Based on California Law**

The Airline Defendants also move to dismiss claims seven and eight, which allege violations of California's Unruh Act and Bane Act, by asserting that Doe's allegations amount to

---

[2] In her opposition, Doe also argues that these claims are also based on the theory that Dinnis was acting as the Airline Defendants' agent at the conference, which provides an alternative, direct basis for liability. Opp'n 8 (citing Compl. ¶ 47 ("At all times relevant, Dinnis acted as an agent of Virgin.")). The court need not reach this argument, as the Airline Defendants did not move to dismiss these claims based on a direct liability theory.

8

an inappropriate extraterritorial application of these statutes. The Unruh Act provides that "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property . . . on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51," including sex. Cal. Civ. Code §§ 51.7(a), 51(b). The Bane Act gives rise to a claim where "a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). According to the Airline Defendants, Doe, who is a Texas resident, cannot claim rights under these statutes based on alleged wrongful conduct that took place in Canada because the Unruh and Bane Acts do not apply extraterritorially, i.e., to conduct that occurred outside of California.[3]

In general, there is a presumption that the "Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corporation,* 51 Cal. 4th 1191, 1207 (2011); *see also N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("[o]rdinarily the statutes of a state have no force beyond its boundaries."). "To evaluate whether a claim seeks to apply the force of a state statute beyond the state's boundaries, courts consider where the conduct that 'creates liability' under the statute occurs." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (citing *Sullivan*, 51 Cal. 4th at 1208). "If the conduct that 'creates liability' occurs in California, California law properly governs that conduct." *Id*. (quoting *Sullivan*, 51 Cal. 4th at 1208). "By contrast, if the liability-creating conduct occurs outside of California, California law generally should not govern that conduct . . .unless the Legislature explicitly indicates otherwise[.]" *Id*. (citing *Sullivan*, 51 Cal. 4th at 1208).

The Airline Defendants assert that "neither the language nor the legislative history" of the

---

[3] The Airline Defendants do not argue that California law does not apply to the remaining claims. *See* Mot. 8 n.3.

9

relevant statutes indicates that the legislature intended that they apply extraterritorially. Mot. 6; *see, e.g.*, Cal. Civ. Code § 51.7(a) ("[a]ll persons within the jurisdiction of this state have the right . . ."). In response, Doe argues that the presumption against extraterritorial application of California law does not apply here, "where it is California conduct that gives rise to liability under the statute[s]." Opp'n 10. According to Doe, California law applies to the Airline Defendants' conduct of "engaging in invidious discrimination, including by dispatching their employee and agent from California to work functions where they have a known propensity to assault women in their professional orbit." *Id*. at 11 ("it is from California that the Airline Defendants dispatched Dinnis, Virgin's agent, to the conference where he assaulted Plaintiff"). However, as currently pleaded, the complaint does not allege any specific conduct by the Airline Defendants that took place in California, other than the maintenance of Virgin's corporate headquarters here. *See* Compl. ¶ 11. Instead, the complaint alleges that the Airline Defendants are liable for Dinnis's violations of the Unruh and Bane Acts based on conduct that took place in Canada under the doctrine of respondeat superior. *See id*. at ¶¶ 107-109, 114-117.

At the hearing, Doe asserted that her Unruh and Bane Act claims against the Airline Defendants are based upon their own conduct in California. Since the complaint does not currently plead such conduct, the Unruh and Bane Act claims are dismissed with leave to amend. The court expresses no opinion about whether allegations that the Airline Defendants employed Dinnis in California and/or made the decision in California to send him to the conference in Canada are sufficient to state Unruh and Bane Act claims against the Airline Defendants.[4]

//
//
//
//
//

---

[4] Since the court finds that Doe has not sufficiently alleged conduct by the Airline Defendants in California, it does not reach the Airline Defendants' due process and conflict of law arguments regarding the Unruh and Bane Acts.

10

## IV. CONCLUSION

For the foregoing reasons, the Airline Defendants' motion to dismiss is granted in part and denied in part. Doe's Unruh and Bane Act claims are dismissed with leave to amend. Any amended complaint shall be filed within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: October 22, 2018



Donna M. Ryu
United States Magistrate Judge

11