PAUL J. BYRNE (State Bar No. 190860)
JOHN C. BROWN (State Bar No. 195804)
**CORNERSTONE LAW GROUP**
351 California Street, Suite 600
San Francisco, CA 94104
Tel: (415) 357-2094
Fax: (415) 974-6433
E-Mail: pbyrne@cornerlaw.com
E-Mail: jbrown@cornerlaw.com

Attorneys for Defendants
VIRGIN AMERICA, INC, and
ALASKA AIR GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>                          Plaintiff,<br><br>        vs.<br><br>VIRGIN AMERICA, INC. and ALASKA AIR GROUP, INC.,<br><br>                          Defendants. | Case No.  4:18-CV-02420-DMR<br><br>**DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)**<br><br>Date: December 20, 2018<br>Time:  11:00 a.m.<br>Courtroom: 4 – 3rd Flr.<br>Judge:  Hon. Donna M. Ryu |

**TO ALL PARTIES AND THEIR ATTORENYS OF RECORD**:

        **PLEASE TAKE NOTICE THAT** on December 20, 2018 at 11:00 a.m., or as soon thereafter

as the matter bay be heard, in Courtroom 4 of the United States District Court located at 1301 Clay

Street, Oakland, California 94612, Defendants Virgin America, Inc. and Alaska Air Group, Inc.

(collectively, the "Airline Defendants") will and hereby do move for an order dismissing portions of

Plaintiff Jane Doe's ("Plaintiff") First Amended Complaint ("FAC").

        This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and based on the

grounds that each of the Seventh and Eighth causes of actions asserting statutory claims under Civil Code § § 51 and 52.1 (the "Civil Rights Acts") fail to state a claim against the Airline Defendants upon which relief may be granted.

The Airline Defendants separately note that the Court previously dismissed "with prejudice" the sixth claim, the statutory cause of action under Government Code Section 12940(k), but Plaintiff re-filed the same claim. [*see* Docket No. 49 (Court's Order on Motion to Dismiss) 5:1-3.] This cause of action is the subject of a separate Motion to Strike.

This motion is based on this notice of motion, the memorandum of points and authorities, the FAC and all other pleadings and records on file in this action, and upon such other argument as the Court may consider at the hearing on this motion.

**Relief Requested**:  By this motion, and for the reasons set forth herein, the Airline Defendants request the Court dismiss Plaintiff's Seventh and Eighth causes of action with prejudice.

DATED:  November 15, 2018          CORNERSTONE LAW GROUP

      /s/ Paul J. Byrne
      /s/ John C. Brown
PAUL J. BYRNE
JOHN C. BROWN
Attorneys for Defendants
VIRGIN AMERICA, INC. and ALASKA AIR GROUP, INC.

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................... 1

II.     RELEVANT PROCEDURAL HISTORY.................................................. 1

     A.      The Complaint Purported to State Claims Under Each of the Civil
           Rights Acts ...................................................................................... 1

     B.      The Court Granted the Airline Defendants' Fed. R. Civ. Proc. 12(b)(6)
           Motion to Dismiss Plaintiff's Claims for Alleged Violations of the
           Civil Rights Acts ............................................................................ 3

III.    NEW FAC ALLEGATIONS ...................................................................... 4

IV.     LEGAL ARGUMENT ............................................................................... 5

     A.      Legal Standard for a 12(b)(6) Motion .............................................. 5

     B.      Plaintiff Does Not State a Cognizable Legal Theory Under Either of the
           Civil Rights Acts. ........................................................................... 6

           (i)     Because Plaintiff Fails to Allege California-based Conduct
                    Proscribed By Either of the Civil Rights Acts, She Essentially
                    Requests Extraterritorial Application of the Civil Rights Acts to
                    Dinnis' Conduct in Canada, As She Did by the Complaint. ............ 6

           (ii)    Because the Civil Rights Acts Do Not Apply to the
                    Extraterritorial Conduct Plaintiff Alleges, Her Claims Under the
                    Civil Rights Acts are Improper, as the Court Previously Held. ....... 8

                a.      Due Process Constrains California's Extraterritorial
                        Application of its Statutes to the Canadian Conduct. ............ 8

                  b.      Courts Presume California Statutes Do Not Apply
                        Extraterritorially to the Canadian Conduct. .......................... 9

                  c.      California's Conflict-of-Law Rules Also Prevent
                        Application of the California Statutes in This Case .............. 9

V.      CONCLUSION ......................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABF Capital Corp. v. Berglass*, 130 Cal.App.4th 825 (2005) .......................................................... 11

*Angel v. Bullington*, 330 U.S. 183 (1947) ....................................................................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ............................................................................. 5

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) .................................................. 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) .................................................................... 6

*Bernhard v. Harrah's Club*, 16 Cal.3d 313 (1976) ...................................................................... 11

*Browne v. McDonnell Douglas Corp.*, 504 F.Supp. 514 (1980).................................................... 11

*Cable v. Sahara Tahoe Corp.*, 93 Cal.App.3d 384 (1979).......................................................... 10

*Camp v. Forwarders Transport, Inc.*, 537 F.Supp. 636 (1982) ................................................... 10

*Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th 1850 (1996)..................................................... 7, 8

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) .................................................................................. 5

*Flowers v. Prasad* , 238 Cal.App.4th 930, 937 (2015) .................................................................. 7

*Galbraith v. City. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ................................................ 6

*Hernandez v. Burger*, 102 Cal.App.3d 795 (1980) ........................................................... 10, 11, 12

*Hurtado v. Superior Court*, 11 Cal.3d 574 (1974) .................................................................... 9, 11

*In re Aircrash in Bali, Indonesia*, 684 F.2d 1301 (9th Cir.1982) ................................................ 11

*Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711 (1972) ........................................................... 11

*King v. State of* California, 242 Cal.App.4th 265, 294  (2015)....................................................... 7

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ........................................................... 9

*Lauritzen v. Larsen*, 345 U.S. 571 (1953)...................................................................................... 8

*Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).................................................................... 6

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) ................................................................... 5

*North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ........................................................ 9

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999) ....................................... 8

*Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157 (1978) ............................................ 10

*Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) .................................................... 6

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) ......................................................................... 6

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) .......................................... 5

*Reich v. Purcell*, 67 Cal. 2d 551, 556 (1967) ......................................................................... 11

*Ryan v. Clark Equipment Co.*, 268 Cal.App.2d 679 (1969) ............................................................. 11, 12

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) ......................... 5

*Sullivan v. Oracle Corp.*, 51 Cal.4th 1191 (2011) .................................................................... 6, 9

*Tucci v. Club Mediterranee*, 89 Cal.App.4th 180 (2001) ............................................................. 10

*Wong v. Tenneco, Inc.*, 39 Cal. 3d 126 (1985) ...................................................................... 12

**Statutes**

California Civil Code § 4 ........................................................................................... 9

California Civil Code § 51 ....................................................................................... passim

California Civil Code § 51.7(a) ................................................................................... 5, 6

California Civil Code § 52.1 ..................................................................................... passim

Fed.R.Civ.Proc. 12(b)(6) ........................................................................................ 1, 3, 5, 6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.      INTRODUCTION

3

Defendants Virgin America, Inc. ("Virgin") and Alaska Air Group, Inc. ("Alaska") move the

4

Court under Fed.R.Civ.Proc. 12(b)(6) for an order dismissing Plaintiff Jane Doe's statutory claims in

5

the Seventh and Eighth causes of action in her FAC.

6

Plaintiff claims rights against the Airline Defendants under California's Unruh Civil Rights

7

Act (the "Unruh Act"), which protects persons "within the jurisdiction of [California]" from

8

deprivation of civil rights, and under California's Bane Act, which makes the deprivation of civil

9

rights by "threats" and "intimidation" in California actionable. After the Court dismissed these two

10

claims on the grounds that Plaintiff failed to allege liability-creating conduct that occurred in

11

California, Plaintiff alleged three new allegations to attempt to trigger applicability of the Civil

12

Rights Acts: Virgin's California employees were required to assure that Dinnis obeyed Virgin's

13

sexual assault policies; Virgin's California employees directed Dinnis to attend the Canada

14

conference; and, Virgin's California employees paid for Dinnis to go to Canada.

15

Plaintiffs' new allegations do not change the result. A California company's failure to assure

16

that its employee is trained not to assault women before sending him on a trip is not liability-creating

17

conduct under either statute. As in the Complaint, the only wrongful act the FAC alleges is sexual

18

harassment in Canada by an Australian, Virgin's former employee Dinnis, against Plaintiff, a Texas

19

resident. Plaintiff therefore requests the extraterritorial application of California's Civil Rights Acts

20

based on Dinnis' actions in Canada, which the Court already found to be improper. For these reasons,

21

the Court should dismiss Plaintiff's claims for violations of the Civil Rights Acts with prejudice.

22

### II.     RELEVANT PROCEDURAL HISTORY

23

#### A.      The Complaint Purported to State Claims Under Each of the Civil Rights Acts[1]

24

Plaintiff resides in Texas. (p. 2:8; p. 2:9.)  Virgin has its principal place of business in

25

---

26

[1] All allegations in section II.A are made in *both* the Complaint and the FAC. The Airline Defendants provide the allegations from the Complaint to facilitate the Court's analysis in showing how little Plaintiff added in an effort to trigger application of the Civil Rights Acts. For ease of reference, the Airline Defendants provide the cites in the following format ([cite from Complaint]; [cite from FAC].)

27

28

Burlingame, California. (p. 1:25-26; p. 1:26-27.)  Alaska is incorporated in the State of Delaware with its principal place of business in Washington. (p. 1:27-28; p. 2:1-2.)  At the time of the alleged assault, Dinnis was a California resident and Virgin's Director of Loyalty. (p. 3:1; p. 3:1.)

"Virgin and Alaska … operate as a single business enterprise." (p. 2:1-2; p. 2:3-4.)  "Virgin and Alaska were each agents and/or employees of the other." (p. 2:3-4; p. 2:5-7.)

In the fall of 2016, Research Now employed Plaintiff, and within the scope of such employment Plaintiff sought key strategic relationships with loyalty professionals, including airlines executives."  (p. 2:25-26; p. 2:22-25.) Plaintiff travelled to a conference in Toronto, which Dinnis also attended. (pp. 2:27-3:1; pp. 2:26-3:1.) "[Virgin and Dinnis] partnered with Research Now." (p. 3:3-4; p. 3:4.)  "To Research Now, Virgin was a valuable account, and Dinnis a key player with whom Plaintiff should meet." (p. 3:5-6; p. 3:5-6.) On the evening of October 24, Plaintiff desired to develop business for Research Now. (p. 3:9-12; p. 3:9-12.) That night at a work-related event after a work-related conference, Plaintiff met Dinnis. (p. 3:13-16; p. 3:13-16.) Dinnis was "drunk" and approached Plaintiff. (p. 3:17-22; p. 3:17-22.) Afterwards, Dinnis saw Plaintiff at a hotel. (p. 3:23-27; p. 3:23-27.)  Dinnis followed Plaintiff to a hotel elevator. (p. 3:28-4:1; p. 4:1-2.)  Then, Dinnis assaulted Plaintiff. (pp. 4:5-21 and 5:1-18; pp. 4:6-21 and; 5:1-18.)

Plaintiff continued by alleging that "Virgin … was well aware that Dinnis was known for carrying out lewd and drunken behavior in front of business associates and other Virgin employees, and sexually assaulting business associates, but did nothing to stop his unlawful behavior." (p. 6:13-15; p. 6:13-15.) "Virgin could have, and should have done more to supervise, train and discipline Dinnis, and to protect Plaintiff." (p. 7:3-4; p. 7:17-18.) "Virgin knew or should have known that [Dinnis] was unfit to work with women in the travel industry, and that he posed a particular risk of sexually harassing and assaulting them. Virgin's negligence in failing to discipline Dinnis was a substantial factor in causing harm to Plaintiff." (p. 7:5-8; p. 7:24-26.)

Plaintiff argues that, "at all times relevant, Dinnis acted as an agent of Virgin. Dinnis attended the functions where these events occurred in furtherance of, and for the benefit of, Virgin's business. Virgin paid his travel and accommodation expenses for the Mega Loyalty Event. … His conduct at

1    the networking events was broadly incidental to the enterprise undertaken by Virgin." (p. 7:9-14; pp.

2    7:27-8:4.)

3            Plaintiff further argues that "[t]he incidents alleged herein were an outgrowth of Dinnis'

4    employment with Virgin and the risk of tortious injury presented by Dinnis' behavior at these events

5    was inherent in the working environment. Dinnis' motivation was an outgrowth of his workplace

6    responsibilities, conditions or events. Consumption of alcohol at these types of events was a

7    customary incident to Dinnis' employment with Virgin and was tolerated and ratified, if not

8    encouraged, by Virgin. At a minimum, Virgin was aware of the consumption of alcohol during these

9    types of events, and Dinnis' drinking to excess was foreseeably within the course and scope of his

10   employment." (p. 7:15-21; p. 8:5-11.)

11           Based on these allegations, Plaintiff pled several tort claims, which are not at issue in this

12   motion. Plaintiff also pled a claim for Violation of California Civil Code § 51,[2] the Unruh Act.

13   Plaintiff argued that the Airline Defendants were liable, based on the doctrine of *respondeat superior*,

14   for Dinnis' violence and threats against her in Canada. Plaintiff also pled a claim based on the Airline

15   Defendants' alleged *respondeat superior* liability under California's Bane Act, Civil Code § 52.1,

16   based on Dinnis' alleged interference with Plaintiff's peaceable exercise and enjoyment of rights by

17   threats, intimidation or coercion.

18   **B.      The Court Granted the Airline Defendants' Fed. R. Civ. Proc. 12(b)(6) Motion to
             Dismiss Plaintiff's Claims for Alleged Violations of the Civil Rights Acts**

19
20           The Airline Defendants moved to dismiss each of the Civil Rights Act claims on three

21   grounds: i) due process constrains California's application of its statutes; (ii) courts presume

22   California statutes do not apply extraterritorially; and, (iii) California's conflict-of-law rules prevent

23   application of the California statutes. The Court issued its order on the motion on October 22, 2018

24   (the "Order") [*see* Docket No. 49], addressing only the presumption of extraterritorial application of

25   California law, finding it did not need to reach the Airline Defendants' due process and conflict-of-

26   law arguments. [*Id.*, 10:27-28, fn 4.]

27   _____

     [2] All references to "Civil Code" hereinafter are to the California Civil Code.

28

The Court stated the presumption that the California legislature "did not intend a statute to be operative with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred." [Docket No. 49, 9:13-18.] The Court further noted that "ordinarily the statutes of a state have no force beyond its boundaries." [*Id.*, 9:17-18.] The Court then stated that, if the liability-creating conduct occurred outside of California, California law should not govern unless the Legislature had explicitly indicated otherwise. [*Id.*, 9:18-25.]

The Order addressed Plaintiff's argument that "the presumption against extraterritorial application of California law does not apply because California conduct gives rise to liability" by finding that the Complaint alleged no specific conduct by the Airline Defendants in California other than maintenance of Virgin's headquarters. [Docket No. 49, 10:3-11.] The Court concluded that "the complaint alleges that the Airline Defendants are liable for Dinnis's violations of the Unruh and Bane Acts based on conduct that took place in Canada under the doctrine of *respondeat superior*." [*Id.*, 10:12-14.]

## III.    NEW FAC ALLEGATIONS

Plaintiff filed her FAC in an attempt to show California conduct that creates liability under the Civil Rights Acts.

The FAC alleges that the Virgin employees who were aware of Dinnis' prior assaults were based in California. (pp. 6:13-16; 7:14-16.) The FAC adds the allegation that "Dinnis reported to Virgin's San Francisco Bay Area-based Chief Media Officer and was subject to discipline by Virgin's San Francisco Bay Area-based human resources personnel." (p. 7:2-3.) The FAC alleges that Dinnis violated Virgin's policies when he assaulted Plaintiff and that California-based employees were charged with enforcing those policies. (p. 7:4-8.)

The FAC also alleges that Virgin's California employees sent Dinnis to Canada and provided the financial resources necessary for him to travel to the conference in Canada, where he met Plaintiff. (p. 7:9-13; 15:7-10.)

The FAC continues by alleging that Virgin's California employees knew that Dinnis did not complete anti-harassment training assigned to him by Virgin, even though they knew he would

DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR
GROUP, INC.'S NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT;
(CASE NO. 4:18-CV-02420-DMR)

-4-

1  interact with women in Canada. (p. 7:19-22.) The FAC then alleges that Virgin's California

2  employees should have known that Dinnis was unfit to work with women and posed a risk of

3  harassing them. (p. 7:23-26; 15:7-10.)

4         Based on these new allegations, Plaintiff re-states her claims against the Airline Defendants

5  for violations of the Civil Rights Acts.

6         Plaintiff pleads her seventh claim for violation of the Unruh Act, which states, in pertinent

7  part: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex

8  … are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in

9  all business establishments of every kind whatsoever." Civil Code § 51(b). Plaintiff argues that

10  Dinnis violated rights that the Unruh Act protects, notwithstanding that she does not claim to have

11  ever entered California. (pp. 13:4-14:14.)

12         Finally, Plaintiff pleads an eighth claim for violation of Civil Code § 52.1, which protects the

13  rights of persons in California to be free from "violence," "threats" and "intimidation" based on, *inter*

14  *alia,* sex. (pp. 14:15-15:12.)

15  **IV.  LEGAL ARGUMENT**

16         **A.  Legal Standard for a 12(b)(6) Motion**

17         A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the

18  complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When

19  reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the

20  factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation

21  omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an

22  absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New*

23  *Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (*citing Ashcroft v. Iqbal*, 556

24  U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks

25  omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court

26  to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

27  U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels

28

1   and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

2   *Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986));

3   *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v.*

4   *City. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

5       A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the

6   absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

7   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) .

8   **B.      Plaintiff Does Not State a Cognizable Legal Theory Under Either of the Civil Rights Acts.**

9

10  **(i)      Because Plaintiff Fails to Allege California-based Conduct Proscribed By Either of the Civil Rights Acts, She Essentially Requests Extraterritorial Application of the Civil Rights Acts to Dinnis' Conduct in Canada, As She Did by the Complaint.**

11

12      "To evaluate whether a claim seeks to apply the force of a state statute beyond the state's

13  boundaries, courts consider where the conduct that 'creates liability' under the statute occurs." *Oman*

14  *v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) (citing *Sullivan v. Oracle Corp.*, 51

15  Cal.4th 1191, 1208 (2011)). "If the conduct that 'creates liability' occurs in California, California law

16  properly governs that conduct." *Id.* (quoting *Sullivan*, 51 Cal. 4th at 1208).

17      Plaintiff seeks to trigger application of California statutes by alleging California-based

18  conduct, i.e., that Virgin's California employees had knowledge of the danger Dinnis posed; that they

19  maintained policies requiring them to train Dinnis; that they sent Dinnis to Canada from California;

20  and, that they provided Dinnis financial resources in California to travel to Canada.

21      But none of the alleged California conduct is prohibited under the Civil Rights Acts  at issue.

22  Possessing knowledge is not an unlawful act under either statute. Maintaining policies is not unlawful

23  under either statute. Providing an employee financial resources to pay expenses on a trip is not an

24  unlawful act.

25      The Unruh Act preserves for "persons within the jurisdiction of [California]" all rights to "full

26  and equal accommodations, advantages, facilities, privileges, or services in … business

27  establishments." Civil Code § 51(b). The related section, Civil Code § 51.7, specifies that persons

28

**DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; (CASE NO. 4:18-CV-02420-DMR)**          -6-

"within the jurisdiction of [California]" have the right to be free from "violence, or intimidation by threat of violence" based on sex. "The Unruh Act was enacted to 'create and preserve a nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments.'" *Flowers v. Prasad* , 238 Cal.App.4th 930, 937 (2015).

The only deprivation of full and equal access Plaintiff alleges happened in Canada, where Dinnis allegedly prevented Plaintiff from, e.g., using the elevator. No Defendant deprived Plaintiff of any rights to full and equal access in California. Indeed, given that Plaintiff did not enter California, she could not have been deprived of full and equal access in California. Similarly, the only "violence" and "intimidation" Plaintiff alleges is by Dinnis in Canada. For these reasons, Plaintiff alleges no California conduct that possibly creates liability under the Unruh Act.

Nor does the Bane Act cover any of the alleged California conduct. The Bane Act prohibits the use of "threats" and "intimidation" to "interfere … with the exercise or enjoyment … of rights." Civil Code § 52.1. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threat[], intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.'" *King v. State of* California, 242 Cal.App.4th 265, 294 (2015), internal citation omitted. But Plaintiff fails to allege threats in California, she fails to allege intimidation in California, and she fails to allege interference with her exercise or enjoyment of rights in California.

*Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th 1850, 1858–1859 (1996), a harassment case involving facts similar to those in the instant action, underscores the conclusion that the presence of corporate decision makers in California is inadequate to trigger coverage of either of the Civil Rights Acts when the harmful conduct occurred abroad. The *Campbell* plaintiff was a resident of another state, employed by a California company. She performed most work on the high seas, where most of the harassment of which she complained took place. Based on these facts, *Campbell* found "the relationship with California is slight." Moreover, *Campbell* held that, even though "the decision

**DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; (CASE NO. 4:18-CV-02420-DMR)**

1   concerning how to discipline [the attacker] for his prior outbursts and [a prior incident] was either

2   made or ratified in Long Beach … Applying the [California statute] in this situation would raise

3   serious constitutional concerns." "The Commerce Clause ... precludes the application of a state

4   statute to commerce that takes place wholly outside of the State's borders ..." *Id.* at 1858. (citations

5   omitted) *Campbell* bolsters the conclusion that Plaintiff cannot claim application of the Civil Rights

6   Acts based simply on the facts that Californians made decisions about discipline of the harasser and

7   where he would work.

8           In summary, the only predicate acts that could support either of the Civil Rights Act claims

9   are Dinnis' actions in Canada. None of the alleged California conduct is actionable under either of the

10  Civil Rights Acts. Therefore, Plaintiff seeks to apply the force of each of the Civil Rights Acts

11  extraterritorially.

12          **(ii)    Because the Civil Rights Acts Do Not Apply to the Extraterritorial
                       Conduct Plaintiff Alleges, Her Claims Under the Civil Rights Acts are**
13          **Improper, as the Court Previously Held.**

14                  a.    **Due Process Constrains California's Extraterritorial Application of
                           its Statutes to the Canadian Conduct.**
15

16          A state cannot draw into control of its law otherwise foreign controversies, on slight

    connections, simply because it is a forum state. *Lauritzen v. Larsen*, 345 U.S. 571, 590-591 (1953) .

17  Due process constrains the determination of which law to apply to a controversy. *See*, *e.g.*, *Angel v.*

18  *Bullington*, 330 U.S. 183, 188 (1947) (citations omitted).

19

20          Following this authority, California courts have held, for example, that California law does

    not protect nonresidents employed outside California even if the employer is California-based.

21  *Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th at 1857-1858; *see also Norwest Mortgage, Inc. v.*

22  *Superior Court*, 72 Cal.App.4th 214, 227 (1999) (California could not apply its unfair competition

23  law to claims by non-California residents arising out of conduct occurring outside of California's

24  borders by actors operating outside of California).

25          Thus, Plaintiff *cannot* make claims against the Airline Defendants under either of the Civil

26  Rights Acts, consistent with due process, because Plaintiff resides outside California and the claims

27  arose outside of California.

28

b.      **Courts Presume California Statutes Do Not Apply Extraterritorially to the Canadian Conduct.**

Ordinarily the statutes of a state have no force beyond its boundaries. *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916). The California Legislature did not intend a statute to be "'operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'" *Sullivan v. Oracle Corp.*, 51 Cal.4th at 1207.

Here, neither the language nor the legislative history of either of the statutes under which Plaintiff claims rights supports a conclusion that the California Legislature intended that it apply extraterritorially. First, the California Civil Code, which includes the Civil Rights Acts, establishes the "law of [California]," not the law of Texas or Ontario, Canada. *See* Civil Code § 4. For this reason alone, the presumption against extraterritoriality applies to the California statutes in full force. *See Sullivan,* 51 Cal.4th at 1207. Further, the Unruh Act, Civil Code § 51(b), pertains by its terms to "persons within the jurisdiction of this state," i.e., California, not to non-residents who allege harm outside California. Because the Civil Code demonstrates a legislative intention to not apply the laws extraterritorially, they do not apply to the Canadian conduct.

c.      **California's Conflict-of-Law Rules Also Prevent Application of the California Statutes in This Case**

Because this dispute is connected with more than one state, California's conflict-of-law rules apply to determine which law governs the claims. As explained below, California's conflict-of-law rules require application of foreign law even if California could apply its own law.

In diversity cases, a federal court must apply the conflict-of-law rules of the state in which it sits (subject to due process constraints).  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  California courts apply a "governmental interest approach," requiring an "analysis of the respective interests of the states involved," to determine which state's law should apply to a particular legal issue.  *Hurtado v. Superior Court*, 11 Cal.3d 574, 579 (1974) .  As such, this Court applies the "governmental interest approach" to determine whether the law of California (due process permitting) or the law of another jurisdiction (e.g., Texas or Canada) applies to Plaintiff's claims.

California's governmental interest approach involves three steps:  First, the court determines

1  whether the foreign law differs from that of the forum. Second, if there is a difference, the court

2  examines each jurisdiction's interest in the application of its own law to determine whether a true

3  conflict exists.  Last, if each jurisdiction has a legitimate interest in the application of its rule of

4  decision, the court analyzes the comparative impairment of the interested jurisdictions and applies the

5  law of the state whose interest would be more impaired if its law were not applied.  *Tucci v. Club*

6  *Mediterranee*, 89 Cal.App.4th 180, 189 (2001) *citing Offshore Rental Co. v. Continental Oil Co.*, 22

7  Cal. 3d 157, 161-162, 165 (1978).

8        "[I]t is clear that there is no presumption against the application of the law of a foreign state to

9  an issue once a party timely invokes that law . . . and shows that the application of that law will

10  further an interest of the foreign state." *Camp v. Forwarders Transport, Inc.*, 537 F.Supp. 636, 639

11  (1982).

12        The first prong of the test is an assessment of whether the laws of California differ from those

13  of the other interested jurisdictions.  Here, Canada and Texas law differ from California law in that

14  neither jurisdiction has an Unruh Act or a Bane Act. Nor does Plaintiff suggest any similar foreign

15  law exists, which she would certainly have done by now. Plaintiff does not – and cannot – cite any

16  case standing for the proposition that a California court must do a conflicts analysis to determine

17  whether its statute is materially distinct from a non-existent foreign statute.[3]

18        The second prong of the test is an assessment of the interests of the different jurisdictions,

19  such as the jurisdiction where the conduct occurred.  "The state with the 'predominant' interest in

20  controlling conduct normally is the state in which such conduct occurs." *Cable v. Sahara Tahoe*

21  *Corp.*, 93 Cal.App.3d 384, 394 (1979); *see also Hernandez v. Burger*, 102 Cal.App.3d 795, 801-803

22  (1980) (recognizing that the state where the alleged wrongful (*i.e.*, negligent) conduct takes place has

23  an interest in deterring the conduct and applying its law). Further, when the issue in a case is active

24  conduct, the jurisdiction in which the conduct leading to injury occurred becomes more important as

25  the jurisdiction with the most significant interest in the resolution of any conflicts issue.  *Kasel v.*

26

27  ─────────────────
[3] Because neither Texas law nor Ontario law regarding the alleged torts differs materially from
California law, the Airline Defendants do not assert that either foreign law applies to the tort claims.

28  DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR          -10-
    GROUP, INC.'S NOTICE OF MOTION AND MOTION TO
    DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT;
    (CASE NO. 4:18-CV-02420-DMR)

1    *Remington Arms Co.*, 24 Cal.App.3d 711, 733 (1972). For these reasons, Ontario is interested in

2    applying its law to any wrongful conduct within its borders.

3            Texas, for its part, is presumably interested in applying its law to compensate its citizen,

4    Plaintiff, to the extent she was harmed. *See Bernhard v. Harrah's Club*, 16 Cal.3d 313, 317-319

5    (1976).

6            Virgin, with its principal place of business in California, is a California resident. *ABF Capital*

7    *Corp. v. Berglass*, 130 Cal.App.4th 825, 834 (2005) (corporation's principal place of business is

8    generally deemed to be its residence). California courts recognize that a state is concerned with the

9    limitation of damages payable by resident defendants. *See Browne v. McDonnell Douglas Corp.*, 504

10   F.Supp. 514, 517-518 (1980) and *In re Aircrash in Bali, Indonesia*, 684 F.2d 1301, 1307 (9th Cir.

11   1982) (Damages limitations are "intended to protect defendants from large verdicts."). Further, a state

12   has little or no interest in compensating a non-resident (*see Reich v. Purcell*, 67 Cal. 2d 551, 556

13   (1967); *see also, e.g., Browne*, *supra*, 504 F.Supp. at 519 (California's interest in providing

14   maximum recovery for resident plaintiffs not implicated when none of the plaintiffs are California

15   residents)), and it certainly has no interest in extending non-residents greater rights than they are

16   afforded by their home state.  *Ryan v. Clark Equipment Co.*, 268 Cal.App.2d 679, 683 (1969).  Thus,

17   California courts would not extend a Texas citizen rights arising under California statutes that give

18   her more or different rights than she enjoys in Texas, particularly when she seeks damages from a

19   California corporation.

20           The third step of the governmental interest analysis only comes into play if each jurisdiction

21   has a legitimate interest in the application of its rule of decision, in which case the court analyzes

22   comparative impairment and applies the law of the state whose interest would be more impaired if its

23   law were not applied.  A "false conflict" is presented where only one state has interest in applying its

24   law.  *Hernandez v. Burger*, 102 Cal.App.3d at 799. Here, there is no real conflict of law; there is only

25   a false conflict as to application of the California statutes, because applying California statutory law

26   providing for compensation to the non-resident plaintiff serves no interest of California. *See Hurtado,*

27   *supra,* 11 Cal.3d at 580. In this case, the laws of Texas or Canada, the interested jurisdictions, would

28

1    be applied, regardless of the forum.  *See Hernandez* 102 Cal.App.3d at 799.

2            Finally, a policy reason militates against the application of California law to this controversy

3    and lends further support to California's interest in refusing to extend the non-citizen Plaintiff rights

4    under the California statutes. Applying California law to protect a non-resident plaintiff encourages

5    forum shopping. *Ryan, supra,* 268 Cal.App.2d at 683. As the California Supreme Court stated,

6    "[p]rotection of persons . . . who wrongfully seek to circumvent the substantive laws of one

7    jurisdiction by enlisting the aid of the courts in another violates and offends the public policy of both

8    jurisdictions . . . our courts must vigilantly resist such recruitment efforts."  *Wong v. Tenneco, Inc.*, 39

9    Cal. 3d 126, 137 (1985).

10           For all these reasons, the California statutory claims should be dismissed.

11   **V.       CONCLUSION**

12           Because neither of the Civil Rights Acts covers any of the California conduct Plaintiff added,

13   Plaintiff's claims for violations of the Civil Rights Acts should be dismissed for the same reasons the

14   Court previously dismissed the claims.

15

16   DATED:  November 15, 2018                **CORNERSTONE LAW GROUP**

17
                                                    /s/ Paul J. Byrne
18                                                  /s/ John C. Brown
                                              PAUL J. BYRNE
19                                            JOHN C. BROWN
                                              Attorneys for Defendants
20                                            VIRGIN AMERICA, INC. and ALASKA AIR GROUP,
                                              INC.
21

22

23

24

25

26

27

28   **DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR**          -12-
     **GROUP, INC.'S NOTICE OF MOTION AND MOTION TO**
     **DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT;**
     **(CASE NO. 4:18-CV-02420-DMR)**

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on November 15, 2018,  I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on CM/ECF system.

DATED this 15th day of November, 2018.

/s/ Paul J. Byrne
PAUL J. BYRNE