LORI E. ANDRUS (SBN 205816)
lori@andrusanderson.com
JENNIE LEE ANDERSON (SBN 203586)
jennie@andrusanderson.com
PAUL LAPRAIRIE (SBN 312956)
paul.laprairie@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Phone: (415) 986-1400
Fax:    (415) 986-1474

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>VIRGIN AMERICA, INC, and ALASKA AIR GROUP, INC.,<br><br>　　　　　　Defendants. | Case No. 4:18-CV-02420-DMR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6)**<br><br>Date:　　December 20, 2018<br>Time:　　11:00 a.m.<br>Dept.:　　Courtroom 4, 3rd Floor<br>Judge:　　Hon. Donna M. Ryu |

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. SUMMARY OF THE RELEVANT ALLEGATIONS ........................................................ 1

III. LEGAL ARGUMENT .......................................................................................................... 3

   A. Legal Standard for a 12(b)(6) Motion to Dismiss. ......................................................... 3

   B. California's Civil Rights Statutes Prohibit Virgin's Conduct. ........................................ 4

      1. A Defendant Is Not Immunized from Liability Under California's Civil Rights Statutes When Their Violations in California Cause Harm Outside California. .......... 4

      2. California's Statutes Apply to the Conduct of California Residents Abroad. ............... 7

      3. California's Choice of Law Analysis Dictates That California Law Applies............... 8

      4. No Due Process Rights are Offended by Holding a California Defendant Liable under California Law for California Conduct. ............................................................ 10

   C. Defendants' Arguments Are Better Tested At The Summary Judgment Stage, After Full Discovery. ........................................................................................................................ 12

IV. CONCLUSION .................................................................................................................. 14

## TABLE OF AUTHORITIES

**STATE CASES**

*Angelucci v. Century Supper Club*
   41 Cal. 4th 160 (2007) ............................................................................................................. 5

*Diamond Multimedia Sys., Inc. v. Super. Ct.*
   19 Cal. 4th 1036 (1999) ........................................................................................................... 7

*Hernandez v. Burger*
   102 Cal. App. 3d 795 (1980) ................................................................................................. 10

*Hurtado v. Super. Ct.*
   11 Cal.3d 574 (1974) ............................................................................................................... 9

*Kasel v. Remington Arms Co.*
   24 Cal. App. 3d 711 (1972) ................................................................................................... 10

*N. Alaska Salmon Co. v. Pillsbury*
   174 Cal. 1, 2 (1916) ................................................................................................................. 8

*Norwest Mortg., Inc. v. Superior Court*
   72 Cal. App. 4th 214 (1999) ................................................................................................... 12

*Sullivan v. Oracle Corp.*
   51 Cal. 4th 1191 (2011) ........................................................................................................... 8

*Wershba v. Apple Computer, Inc.*
   91 Cal. App.4th 224 (2001) ..................................................................................................... 7

**FEDERAL CASES**

*AT & T Mobility LLC v. AU Optronics Corp.*
   707 F.3d 1106 (9th Cir. 2013) ............................................................................................... 11

*Beliveau v. Caras*
   873 F. Supp. 1393 (C.D. Cal. 1995) ...................................................................................... 13

*Cardoso v. Cty. of San Mateo*
   Case No. C 12-05130 CRB, 2013 WL 900816, at *1 (N.D. Cal. Jan. 11, 2013) .................. 12

*CRS Recovery, Inc. v. Laxton*
   600 F.3d 1138 (9th Cir. 2010) ................................................................................................. 9

*Farar v. Bayer AG*
   No. 14-CV-04601-WHO, 2017 WL 5952876, at *16 (N.D. Cal. Nov. 15, 2017) ................. 9

*In re Gilead Scis. Sec. Litig.*
   536 F.3d 1049 (9th Cir. 2008) ............................................................................................... 12

*Lopez v. Smith*
   203 F.3d 1122 (9th Cir. 2000) ................................................................................................. 4

*Love v. U.S.*
   915 F.2d 1242 (9th Cir. 1988) ................................................................................................. 4

*Mendiondo v. Centinela Hosp. Med. Ctr.*
   521 F.3d 1097 (9th Cir. 2008) ................................................................................................. 4

*Michelle M. v. Dunsmuir Joint Union Sch. Dist.*
   2006 WL 2927485, at *6 (E.D. Cal. Oct. 12, 2006) ............................................................... 5

*Nicole M. v. Martinez Unified Sch. Dist.*
   964 F. Supp. 1369 (N.D. Cal. 1997) ....................................................................................... 5

*Oman v. Delta Air Lines, Inc.*
  889 F.3d 1075 (9th Cir. 2018) ........................................................................... 8

*Paulsen v. CNF Inc.*
  559 F.3d 1061 (9th Cir. 2009) ........................................................................... 9

*Precht v. Kia Motors Am., Inc.*
  No. SACV141148DOCMANX, 2014 WL 10988343, at *5 (C.D. Cal. Dec. 29, 2014) ................................................................................................................. 7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*
  806 F.2d 1393 (9th Cir. 1986) ........................................................................... 4

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*
  No. C-13-1803 EMC, 2013 WL 4530470, at *11 (N.D. Cal. Aug. 26, 2013) ........ 9

*Thompson v. Nat'l R.R. Passenger Corp.*
  No. C 08-03280 CRB, 2008 WL 11398932, at *4 (N.D. Cal. Dec. 17, 2008) ...... 7, 8, 10

**UNITED STATES SUPREME COURT CASES**

*Allstate Ins. Co. v. Hague*
  449 U.S. 302 (1981) ......................................................................................... 11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ........................................................................................... 4

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................................................... 4

*Campbell v. Arco Marine, Inc.*
  42 Cal.App.4th 1850 (1996) ............................................................................ 12

*Klaxon Co. v. Stentor Elec. Mfg. Co.*
  313 U.S. 487 (1941) ........................................................................................... 8

*Lauritzen v. Larsen*
  345 U.S. 571 (1953) ......................................................................................... 11

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ......................................................................................... 10

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIV ..................................................................................... 11

**OTHER AUTHORITIES**

Cal. Civ. Code § 51.7(a) ....................................................................................... 1

Cal. Civ. Code § 52.1 ............................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1, 4

Fed. R. Civ. P. 15(a) ............................................................................................. 4

Fed. R. Civ. P. 8(a) ............................................................................................... 3

I.  **INTRODUCTION**

Virgin America, Inc. ("Virgin") and Alaska Air Group, Inc. ("Alaska") (collectively, "Defendants") seek to avoid responsibility under Cal. Civil Code sections 51.7(a) ("the Unruh Civil Rights Act") and 52.1 ("the Ralph Civil Rights Act") (collectively "the Civil Rights statutes"), arguing that these statutes do not apply to this matter. However, in her First Amended Complaint ("FAC"), Plaintiff alleges that Virgin, by and through its California employees, directed, authorized, or permitted Stuart Dinnis ("Dinnis")[1] to attend the conference where he assaulted Plaintiff, despite knowing or being substantially certain that doing so would threaten the civil rights of the women attending, including Plaintiff. Plaintiff further alleges that Virgin's California-based personnel were required to ensure that Dinnis was trained on—and obeyed— Virgin's anti-harassment policies, and they failed to do so. Such conduct, occurring in California, violated the Civil Rights statutes, and is sufficiently pled.

For the reasons explained below, the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to F.R.C.P. 12(b)(6) ("Motion") should be denied.

II.  **SUMMARY OF THE RELEVANT ALLEGATIONS**

In the fall of 2016, Plaintiff Jane Doe was a Vice President for Research Now, a global expert in online market research data and a business partner of Virgin. FAC ¶¶ 12, 14 (Dkt. No. 50). Dinnis was the Director of Loyalty at Virgin and was a resident of California.[2] *Id*. at ¶¶ 13.

Although Dinnis was employed at Virgin for nearly two years, he never took anti-harassment training. It was the responsibility of Virgin's California-based personnel to ensure that Dinnis was trained on Virgin's anti-harassment policies, and the employees responsible for making sure that Dinnis was properly trained were aware that Dinnis did not complete his assigned anti-harassment training. FAC ¶ 49.

As a part of his professional roles and responsibilities, Dinnis attended—in a professional capacity alongside other Virgin employees—a Mega Loyalty conference in Toronto, Canada, for

---

[1] Stuart Dinnis was originally a defendant in this suit; the Court severed the complaint against him. Dkt. No. 27).
[2] After his employment with Virgin was terminated, Dinnis return to his native Australia, where he was successfully served on June 4, 2018 via the Hague Convention on Service. Dkt. No. 16. *footnote cont'd*

the purpose of meeting and networking with other professionals in the travel and loyalty sector.[3] *Id*. at ¶¶ 13, 17-18.

At the conference, Dinnis introduced himself to Plaintiff while she was networking with other Virgin employees who directly reported to him. *Id*. at ¶ 16. While obviously intoxicated, Dinnis repeatedly engaged Plaintiff during the networking event. *Id*. at ¶ 17. When Plaintiff returned to her hotel, Dinnis was waiting for her in the lobby. *Id*. at ¶ 18. Taking advantage of Plaintiff's need to preserve her company's professional relationship with Virgin, Dinnis repeatedly battered and assaulted Plaintiff in a sexual manner. *Id*. at ¶¶ 18-32.

Virgin maintains its principal place of business in Burlingame, California. *Id.* at ¶ 10. During the course of his duties in Virgin's employment, Dinnis was expected to attend networking events and hold business meetings with key partners of the company's loyalty program. *Id*. at ¶ 51. To that end, Virgin paid Dinnis's travel and accommodation expenses for the subject conference. *Id.* at ¶ 47.

Prior to the assault on Plaintiff, Virgin was well aware that Dinnis regularly engaged in lewd and drunken behavior, including sexually assaulting female business associates. *Id*. at ¶ 41. Specifically, in November 2015 (nearly a year before he attacked Plaintiff) Dinnis sexually assaulted a female employee of a hotel booking company at a work function, and in mid-2016 Dinnis again assaulted two female employees of the same hotel booking company. *Id*. at ¶¶ 42-43. Other Virgin employees witnessed and/or were aware of the assaults, and after Dinnis assaulted Plaintiff, related to her and others that Dinnis had issues with drinking and respecting boundaries with women, and expressed embarrassment at his repeated misconduct. *Id*. at ¶ 43.

Based on these prior instances, Virgin, by and through its California employees, had ***actual knowledge*** of Dinnis's history of witnessed sexual assaults, regularly carried out during networking business events and within the course and scope of his employment duties, and with more than sufficient time to have implemented corrections. *Id.* at ¶ 48.

---

[3] A "customer loyalty program" is a program that offers frequent customers benefits in the form of discounts, rebates, free products, or other promotions. "Loyalty marketing" is a strategic approach to marketing in which a company focuses on growing and retaining existing customers through incentives. Companies like Research Now partner with airlines in the "loyalty sector."

In attending the networking event, Dinnis was acting as Virgin's agent, and his conduct was broadly incidental to the enterprise undertaken by Virgin. *Id.* at ¶ 51.

Dinnis worked for Virgin at its headquarters in the San Francisco Bay Area, California, where he reported to, and was subject to discipline by, Virgin's California-based personnel. *Id.* at ¶ 44. Virgin, by and through its employees in California, knew or should have known that he was unfit to work with women in the travel industry, and that he posed a particular risk of sexually harassing and assaulting them. *Id.* at ¶ 50. Virgin, by and through its California employees, knew he had not been trained on Virgin's anti-harassment policies. *Id.* at ¶ 49. Virgin, by and through its California employees, directed, authorized, or permitted Dinnis to attend the Mega Loyalty Conference and knew or were substantially certain that doing so would violate the civil rights of the women attending, including Plaintiff. *Id.* at ¶¶ 46, 48, 114, 123.

## III. <u>LEGAL ARGUMENT</u>

Virgin, a corporation with its principal place of business here in California, seeks to avoid liability under the Civil Rights statutes for its conduct in sending a California employee, known to accost female business associates at work conferences, to a work conference where he assaulted a female business associate. But Virgin's California conduct gives rise to its liability under the Civil Rights statutes such that no extraterritorial application of the statute is required. Additionally, Defendants attempt to draw the court into a conflict of law analysis without identifying any actual conflict, and then ignore California's fundamental interest in regulating its residents' misconduct. In the end, Defendants fail to carry their burden of identifying what law the Civil Rights statutes are meant to conflict with, and thus no conflict exists. Finally, there is no deprivation of due process in holding a corporation headquartered in California liable under California statutes where it has a significant aggregation of contacts with California.

Because it is appropriate to hold a California defendant company liable under California Civil Rights statutes for acts in California, the Defendants' Motion should be denied.

### A. <u>Legal Standard for a 12(b)(6) Motion to Dismiss.</u>

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead claims with sufficient specificity to "give the defendant fair notice of what the … claim is and the grounds upon which

it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. U.S.*, 915 F.2d 1242, 1245 (9th Cir. 1988). If dismissal is granted, leave to amend should be freely allowed "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); Fed. R. Civ. P. 15(a).

### B. California's Civil Rights Statutes Prohibit Virgin's Conduct.

The Civil Rights statutes prohibit California businesses from conduct that violates the civil rights of others. Sending a person known to assault women at conferences to another conference without adequate supervision, training or discipline, interferes with the rights of all women at such conferences. Defendants have also failed to carry their burden to specify what specific, relevant, and material law would apply, if not California law. Nor have they identified ***any actual conflict of laws*** or shown that the application of California law would offend their due process rights.

#### 1. A Defendant Is Not Immunized from Liability Under California's Civil Rights Statutes When Their Violations in California Cause Harm Outside California.

The Civil Rights statutes prohibit Defendants' wrongful California conduct which caused Plaintiff to suffer a serious sexual assault.

By focusing on Dinnis' reprehensible conduct outside California, Defendants seek to avoid liability for Virgin's conduct inside California. Defendants attempt to minimize their California conduct as merely "[p]ossessing knowledge," "[m]aintaining policies" or "[p]roviding an employee financial resources to pay expenses on a trip." Motion at p. 6. In isolation, these

descriptions of Virgin's conduct appear anodyne, but, significantly, they ignore Plaintiff's allegations that in California Virgin **possessed knowledge of** Dinnis' propensity to sexually assault women, that Virgin's California employees **did not** adequately supervise, train, or discipline Dinnis when he violated Virgin's company policies, and that Virgin's California employees provided Dinnis financial resources to pay expenses on a trip ***they knew or should have known*** that Dinnis would sexually assault women during.

### a.   The Unruh Civil Rights Act Was Violated in California

Defendants' California Conduct gives rise to liability under the Unruh Civil Rights Act. The Unruh Civil Rights Act "must be construed liberally in order to carry out its purpose." *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007). "The Act serves as a preventive measure, without which it is recognized that businesses might fall into discriminatory practices." *Id.* (holding that a plaintiff need not make an affirmative demand for equal treatment in order to be able to state a claim under the Act). The Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property ... on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51," including sex, and are entitled to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code §§ 51.7(a), 51(b). Under the Unruh Civil Rights Act, "an inadequate response to complaints of sexual harassment [may be construed] as a denial of 'advantages, facilities, privileges, or services.'" *Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal. 1997) (finding that where school principal was on notice of peer sexual harassment of student and failed to act such allegations met plaintiff's burden that defendants intentionally failed, because of plaintiff's sex, to appropriately address plaintiff's reports of sexual harassment); *see also Michelle M. v. Dunsmuir Joint Union Sch. Dist.*, Case No. 204CV2411MCEPAN, 2006 WL 2927485, at *6 (E.D. Cal. Oct. 12, 2006) (denying summary adjudication on Unruh Act claims where defendant's failure to properly disseminate the school's sexual harassment policy in the face of known previous incidents were alleged to cause plaintiff to suffer harassment).

As alleged in the First Amended Complaint, Virgin had actual knowledge of Dinnis' propensities and past conduct in California towards women, controlled his employment in California, neglected to train him in California, and it was from California he was sent to carry out Virgin's business at the Mega Loyalty conference where he ultimately assaulted Plaintiff. At the pleadings stage, this conduct suffices to show that Virgin created a denial of Plaintiff's civil rights as a woman.

### b.  The Bane Act Was Violated in California.

The Bane Act provides a civil cause of action for damages where a person "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured . . . by the Constitution or laws of this state." Cal. Civil Code § 52.1(a), (b). "§ 52.1 does not by its terms require violence or threat of violence." *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005); *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1289 (9th Cir. 2001) (upholding jury finding of liability under Bane Act where woman was subjected to frequent bullying by a co-worker).

Bane Act claims have survived motions to dismiss where a defendant city mayor "directed the presence of" police officers and heavy equipment, which were inherently intimidating, to remove homeless camps, despite no allegations that the defendant city mayor herself was present when the police or heavy equipment intimidated the plaintiffs. *Sanchez v. City of Fresno*, Case No. 1:12-CV-00428-LJO, 2014 WL 2042058, at *17 (E.D. Cal. May 16, 2014). Similarly, Virgin directing, authorizing, or permitting Dinnis to attend the Mega Loyalty Conference where he was likely to, and did, threaten, intimidate, and coerce Plaintiff constitutes an interference with Plaintiff's civil rights that is actionable under the Bane Act. Defendants' citation to *Campbell* to argue that corporate decision making in California is insufficient is misplaced, because there the court noted that the defendant was "headquartered [in California] but no one in its headquarters participated in or ratified the conduct," whereas here Plaintiff has alleged that California-based employees of Virgin directed, authorized or permitted Dinnis to attend the Mega Loyalty

1  conference which violated the civil rights of Plaintiff. *Campbell v. Arco Marine, Inc.*, 42 Cal.
2  App. 4th 1850, 1858 (1996).

### 2. **California's Statutes Apply to the Conduct of California Residents Abroad.**

Defendants invoke a presumption against extraterritorial application of California's laws to challenge Plaintiff's claims under the Civil Rights statutes. Motion at p. 8. But the presumption against extraterritorial application of California laws does not apply where it is California conduct that gives rise to liability under the statute.

The presumption against extraterritorial application of California's laws "has never been applied to an injured person's right to recover damages suffered as a result of an unlawful act or omission committed in California." *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999) (permitting out-of-state purchasers of securities affected by unlawful market manipulation to recover under California's corporate securities law); *see Wershba v. Apple Computer, Inc.*, 91 Cal. App.4th 224, 243 (2001) (California statutes apply to "non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California."); *Thompson v. Nat'l R.R. Passenger Corp.*, Case No. C 08-03280 CRB, 2008 WL 11398932, at *4 (N.D. Cal. Dec. 17, 2008) (holding it was premature on motion to dismiss to deny application of FEHA to employee who worked in Nevada where employer supervised employee from its California offices). The presumption against extraterritoriality does not apply where a complaint sufficiently alleges California conduct. *Precht v. Kia Motors Am., Inc.*, Case No. SACV141148DOCMANX, 2014 WL 10988343, at *5 (C.D. Cal. Dec. 29, 2014) (denying motion to dismiss Florida consumer's California statutory claims where "Defendant made its decisions about what to communicate and what not to communicate to consumers" in California).

Defendants' citation to *Sullivan v. Oracle Corp.* does not counsel against the application of California law to the present dispute, as *Sullivan* declined to find liability under California's Unfair Competition Law for failure to pay required overtime compensation to non-California employees ***because*** the employer's classification policy, which was the only California conduct

alleged, was not "unlawful in the abstract." 51 Cal. 4th 1191, 1208 (2011).[4] Nor does *N. Alaska Salmon Co. v. Pillsbury* counsel against application of the Civil Rights statutes to Virgin's California conduct, as in *Pillsbury* there was no discussion of any California-based wrongdoing of the defendant. 174 Cal. 1, 2 (1916). However, here in California, Virgin determined the course and scope of Dinnis's employment to include attending networking events where he was known to drink and accost women attending such events, in California they failed to properly train him, and it is from California that the Defendants dispatched Dinnis, Virgin's agent, to the conference where he assaulted Plaintiff. Virgin's corporate conduct occurred in California and gives rise to Virgin's liability under California's Civil Rights statutes.

At this stage of the pleadings, Plaintiffs have set forth sufficient allegations to undermine Defendants' contention that the Civil Rights statutes would not apply to the conduct alleged. *See Thompson*, 2008 WL 11398932, at *4 (denying motion to dismiss where pleadings set forth allegations that undermine contention that misconduct occurred exclusively out of state).

### 3. **California's Choice of Law Analysis Dictates That California Law Applies.**

In diversity cases a federal court must apply the conflict-of-law rules of the state in which the federal court sits to determine which state's laws should apply to a particular legal issue. However, first there must be a demonstrated ***conflict*** of laws for the forum state's laws not to apply, and Defendants have not carried their burden to establish a conflict exists in this case. Rather, they have conceded that no conflict exists, Motion at p. 8, and thus the Court must apply California law.

A federal court applies the conflict-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). California courts apply a "governmental interest approach," requiring an "analysis of the respective interests of the states involved," to determine which state's law should apply to a particular legal issue. *Hurtado v. Super. Ct.*, 11

---

[4] *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075 (9th Cir. 2018) is inapplicable. There, the Ninth Circuit certified certain questions to the California Supreme Court, including the proper territorial reach of the California Labor Code (and, ultimately, whether it applies to flight attendants whose work brings them into California periodically). *Id*. at 1079. *Oman* made ***no*** ruling on the certified questions, and simply does not govern this Motion.

1  Cal.3d 574, 579 (1974).  "California has specifically rejected the alternative 'place of the wrong'
2  rule." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010).  "As a default, the law
3  of the forum state will be invoked, and the burden is with the proponent of foreign law to show
4  that the foreign rule of decision will further the interests of that state." *Id.* (applying California
5  law to dispute over ownership where no evidence that California law and Virginia law conflict).

6  In the choice-of-law analysis, "the burden [is] on defendants to fulfill the three-step
7  governmental interest test, […] by 'exhaustively detail[ing] the ways in which California law
8  differs from the laws of the [ ] other jurisdictions in which class members reside.'" *Farar v.*
9  *Bayer AG*, Case No. 14-CV-04601-WHO, 2017 WL 5952876, at *16 (N.D. Cal. Nov. 15, 2017)
10 (finding Defendants failed to meet burden to show foreign law, rather than California law,
11 applied).  "The fact that two or more states are involved does not itself indicate that there is a
12 conflict of law problem." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, Case No. C-13-1803
13 EMC, 2013 WL 4530470, at *11 (N.D. Cal. Aug. 26, 2013).  The "choice of law inquiry **ends at**
14 **step one** of the governmental interest analysis" where the laws of California and other forums do
15 not differ.  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080–81 (9th Cir. 2009) (emphasis supplied).

16 The first prong of the test is an assessment of whether the laws of California differ from
17 those of the other interested jurisdictions.  *CRS Recovery, Inc.*, 600 F.3d at 1142.  Defendants
18 assert that Canada and Texas law differs from California law in that neither jurisdiction has a
19 Unruh Act or Bane Act.  Motion at p. 10.  From this premise Defendants contend that there are no
20 cases standing for the proposition that a California court must do a conflicts analysis to determine
21 whether its statute is materially distinct from a non-existent foreign statute.  *Id.*  Plaintiffs agree,
22 that they cannot find any cases requiring a California court to conduct a conflict analysis when
23 there is no **conflict**.  Where a proponent of another forum's law has "offered no evidence of the
24 relevant law in Panama, Canada, or any other relevant jurisdiction, and thus has not established
25 that there is any material difference in the relevant law," they will fail to meet their burden to
26 show law other than the forum state's law applies.  *Tasion Commc'ns, Inc.*, 2013 WL 4530470, at
27 *12.  Thus, Defendants have failed to carry their burden to "exhaustively detail" the ways in
28 which California law differs from the laws of other jurisdictions.  *Farar*, 2017 WL 5952876, at

*16. Accordingly, there is no conflict of laws to prevent the application of California's Civil Rights statutes.

Because Defendants have identified no actual conflict of laws, their citation to cases where courts found conflicting laws and weighing differing policy interests are of no moment. For instance, Defendants' citation to *Hernandez v. Burger* involved the question of whether California or Mexico's damages limitations would apply, whereas here Defendants do not specify the relevant law they believe should apply instead of California's, or explain how it is materially different, so no conflict exists. 102 Cal. App. 3d 795, 804 (1980). Similarly, in *Kasel v. Remington Arms Co.* the court concluded that California's law which permits strict liability in tort would govern a claim for an injury that occurred in Mexico rather than Mexico's law which did not permit recovery pursuant to strict liability, a conflict that is not present here. 24 Cal. App. 3d 711, 732 (1972) (foreign nation's interest in applying its law is diminished where none of its citizens are a party to the suit, even where it is the site of injury).

Since Defendants have failed to establish the existence of a conflict of laws and have failed to identify what specific law they believe should apply to Plaintiff's claims, there is no conflict of law to analyze and the law of the forum state should be applied.

### 4. No Due Process Rights are Offended by Holding a California Defendant Liable under California Law for California Conduct.

As a corporation headquartered in California, employing a California employee and agent, Virgin has a significant aggregation of contacts with California. Accordingly, holding it accountable for the actions of its agents under California law is neither arbitrary nor unfair.

To act within the bounds of due process, a state properly applies its substantive law in cases where it has significant contacts with the matter before it, such that choice of its law is "neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). "Only in a 'rare case' are due process concerns such that a court cannot constitutionally apply forum law." *Thompson*, 2008 WL 11398932, at *4.

Under a due process analysis, "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant

aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981); *see also* U.S. Const. amend. XIV ("Due Process Clause").  The Constitution's Due Process Clause invalidates application of a state's law only where the state has "no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction." *Id.* at 308, 320.  Due process constraints on the application of a state's law are not limited by the place of Plaintiff's injury. *AT & T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1112 (9th Cir. 2013). "In-state conduct that causes out-of-state injuries can be relevant to a due process analysis." *Id.* "[C]onduct by a defendant within a state that is related to a plaintiff's alleged injuries and is not 'slight and casual' establishes a 'significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *Id.* at 1113 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). "The 'relevant transaction or occurrence' for purposes of a due process analysis is therefore informed, at least in part, by the scope of conduct that gives rise to liability under the relevant statutes." *Id.* at 1110 (holding that it was reversible error to deny the application of California's law to out of state purchases without an examination of California conduct by the defendant).

The conduct that gives rise to Defendants' liability under the Civil Rights statutes is: the knowledge of Dinnis's history of assaulting women business associates in work settings, and the Airline Defendants' California action of sending Dinnis to a networking function where he would be in a position to assault vulnerable women while carrying out Defendants' networking goals. Dinnis was employed in California, for a California employer, and he was dispatched from California within the scope of his employment to attend networking events including the one where he assaulted Plaintiff.

Defendants' citation to *Lauritzen v. Larsen*, which involved "foreign transaction between foreigners in foreign ports" is illustrative of how remote a conflict must be in order to offend due process, as opposed to the present instance of a California defendant being called to answer for the wrongdoing of its California employee and agent.  345 U.S. 571, 590 (1953) (suit by Danish seaman against Danish owner of Danish vessel brought in New York

Nor is Defendants' citation to *Norwest Mortg., Inc. v. Superior Court* illuminating, because there the UCL claims were dismissed when the facts demonstrated that non-Californians were injured by conduct occurring outside of California's borders by defendants whose headquarters and principal places of operation were also outside of California. 72 Cal. App. 4th 214, 227 (1999). Here, in contrast, Virgin's principal place of operation is in California and Dinnis was a California resident while he was their employee.

Because no due process rights are offended by holding a California defendant liable under California law for its California conduct, Defendants' Motion cannot be sustained.

### C. **Defendants' Arguments Are Better Tested At The Summary Judgment Stage, After Full Discovery.**

Plaintiffs have alleged California conduct giving rise to liability under the Civil Rights statutes. "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

Defendants' citation to *Campbell v. Arco Marine, Inc*. is illustrative of how the proper place to test whether Defendant's California conduct violated the Civil Rights statutes is at summary judgment, as *Campbell* was decided at summary judgment after the development of a full factual record failed to show anything but the slightest California conduct, whereas here Plaintiff has alleged that Virgin, whose principal place of business is in California, employed Dinnis while he was a resident of California, failed to properly train him in California, and sent him on the business networking trip in question with knowledge of his past conduct from California. 42 Cal.App.4th 1850 (1996).

Courts frequently decline to dismiss Unruh and Bane Act claims at the pleadings stage. *See Cardoso v. Cty. of San Mateo*, Case No. C 12-05130 CRB, 2013 WL 900816, at *1 (N.D. Cal. Jan. 11, 2013) (denying motion to dismiss Bane act claims where claim may turn on details "unavailable at this early stage of litigation"); *Martinez Unified Sch. Dist.*, 964 F. Supp. at 1389 (upholding Unruh Act claims on motion to dismiss); *Dunsmuir Joint Union Sch. Dist.*, 2006 WL

2927485, at *8 (E.D. Cal. Oct. 12, 2006) (holding where a defendant fails to "follow its own internal policy, not to mention California law, in properly disseminating a sexual harassment policy [which] may have contributed to the environment in which [a Plaintiff] was harassed[, t]his is enough to survive summary judgment" on an Unruh Act claim); *Beliveau v. Caras*, 873 F. Supp. 1393, 1399 (C.D. Cal. 1995) (Unruh Act claims not dismissed at pleading stage).

Defendants' corporate witness, Rachael Mattioli--purportedly the "person most knowledgeable" about Dinnis' employment with Virgin--was unable to answer even basic questions about Dinnis' employment: such as how Dinnis came to be employed at Virgin (108-09; 23-25, 1-3); whether Dinnis was expected to travel for work (109; 4-9); who Dinnis' boss was (109; 10-11); whether Dinnis had direct reports (110; 6-7); who approved Dinnis' travel (110-11; 24, 1); or whether Dinnis electronically signed the employee handbook (58; 12-14). Deposition of Rachael Mattioli, Exhibit A to the Declaration of Lori E. Andrus ("Andrus Decl."). Since Ms. Mattioli repeatedly explained that Diane Chandra, a former Alaska employee, would know the answers to dozens of questions, Plaintiff will subpoena the deposition of Ms. Chandra. Andrus Decl. ¶ 3-4. Plaintiff also intends to depose Virgin's former Chief Media Officer and Chief Compliance Officer. *Id*.

Defendants have not yet produced many corporate policies that could bear on this issue. For example, though Plaintiff asked for all versions of Defendant's employee handbooks or employee manuals applicable to Stuart Dinnis in September, Defendants have not produced the policy governing Dinnis' travel and have not produced Virgin' Anti-Drug and Alcohol Use Policy. Andrus Decl. ¶ 5. Though these policies should already have been produced, Plaintiff will issue additional document requests asking for those documents specifically in short order. Andrus Decl. ¶ 6.

Before the Court can determine whether the California-based conduct ultimately supports her Civil Rights' claims, Plaintiff is entitled to ***fully explore*** these and other facts relating to what Defendants knew in California about Dinnis' propensity to drink to excess and assault female business colleagues, and whether they properly trained Dinnis in California. Only after a full exploration of the circumstances underlying and preceding the attack on Plaintiff will the trier of

fact be able to ultimately determine whether any California-based conduct violated the Civil Rights statutes.

## IV. CONCLUSION

Plaintiffs have adequately pled California conduct giving rise to liabilities under the Civil Rights statutes; that is all they are required to do at this stage. For the reasons set forth herein, Defendants' Motion should be denied in its entirety

Dated: November 29, 2018                    ANDRUS ANDERSON LLP

                                            By:  /s/ Lori E. Andrus
                                                    Lori E. Andrus

                                            Lori E. Andrus (SBN 205816)
                                            lori@andrusanderson.com
                                            Jennie Lee Anderson (SBN 203586)
                                            jennie@andrusanderson.com
                                            Paul Laprairie (SBN 312956)
                                            paul.laprairie@andrusanderson.com
                                            ANDRUS ANDERSON LLP
                                            155 Montgomery Street, Suite 900
                                            San Francisco, CA 94104
                                            Phone:   (415) 986-1400
                                            Fax:     (415) 986-1474
                                            *Attorneys for Plaintiff*